Norbert Stahl (SBN 194091)
nstahl@patentlawservice.com
STAHL LAW FIRM
2 Meadowsweet Lane
San Carlos, California 94070
Telephone: (650) 802-8800
Facsimile: (650) 802-8484

Attorney for Defendant and Counterclaimant
APEX MEDICAL TECHNOLOGIES, INC. and
Defendant MARK MCGLOTHLIN

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| I-FLOW CORPORATION, a Delaware corporation,<br><br>      Plaintiff,<br><br> vs.<br><br>APEX MEDICAL TECHNOLOGIES, INC., a California corporation; MARK MCGLOTHLIN, an Individual,<br><br>      Defendants.<br><hr>APEX MEDICAL TECHNOLOGIES, INC., a California corporation<br><br>      Counterclaimant,<br><br> vs.<br><br>I-FLOW CORPORATION, a Delaware corporation,<br><br>      Counterdefendant. | Case No. 07-CV-1200 – DMS (NLS)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL PLAINTIFF TO SUPPLEMENT RESPONSES TO FIRST SETS OF INTERROGATORIES.**<br><br><br>Date: August 26, 2008<br>Time: 1:30 p.m.<br>Place: 940 Front St, San Diego, Room 1118<br><br>Judge: Hon. Nita L. Stormes |

Defendant Apex Medical Technologies, Inc. ("Apex") and Mark McGlothlin ("McGlothlin") (collectively "Defendants") hereby submit this Memorandum of Points and Authorities in Support of their Motion to Compel plaintiff I-Flow Corporation's ("I-Flow" or plaintiff) to Supplement Responses to First Sets of Interrogatories by Apex and McGlothlin.

## INTRODUCTION

Apex and McGlothlin each served a first set of interrogatories on I-Flow ("Interrogatories").  Defendants believe that I-Flow's responses to the Interrogatories ("Responses") are deficient as they do not provide all "information available to " I-Flow pursuant to Fed. R. Civ. P. 33(b)(1)(B), or that I-Flow improperly preserves an option to supplement its responses at a later time in a manner that is highly prejudicial to Defendants.

Defendants therefore ask that I-Flow be ordered to supplement is Responses with all "information available to" I-Flow.

## STATEMENT OF FACT

**A.     Service of Interrogatories and Responses, and the Meet and Confer.**

On May 28, 2008, Apex and McGlothlin each served a first set of interrogatories ("Interrogatories") on I-Flow.  Declaration of Norbert Stahl filed herewith ("Stahl Dec."), Ex. A and B.

On June 30, 2008, I-Flow served a response to each of the Interrogatories ("Responses"). Stahl Dec., Ex. C and D.  (I-Flow designated the Responses as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" pursuant to the Protective Order of December 13, 3007 in this case.  In this Memorandum, Defendants present the reasons for why the Responses are deficient without reciting the substance of the Responses so that this Memorandum does not require filing under seal.)

On July 16, 2008, Defendants notified I-Flow of deficiencies in the Responses and asked for supplementation by July 20, 2008.  Stahl Dec., Ex. E.

1       On July 21, 2008, Defendants notified I-Flow that they did not receive any response to the
2  July 16 letter and that counsel for Defendants will call counsel for I-Flow on July 22, 2008, at
3  10:00 a.m. to meet and confer.  Stahl Dec., Ex. F.

4       On July 22, 2008, counsel for Defendants called counsel for I-Flow at 10:00 a.m. but did
5  not get to speak to counsel for I-Flow and therefore left a message that counsel for Defendants
6  will meet and confer with counsel for I-Flow on July 23, 2008 at the deposition of an officer of I-
7  Flow in the Irvine office of counsel for I-Flow.  Stahl Dec., ¶8.

8       On July 23, 2008, counsel for Defendants discussed in person with counsel for I-Flow the
9  deficiencies of the Responses and requested supplementation.  Counsel for I-Flow responded that
10 I-Flow will not supplement the Responses.  Stahl Dec., ¶9.

**B.     The Interrogatories.**

1.     <u>Trade Secret and Non-Trade Secret Confidential Information.</u>

14      I-Flow alleges *inter alia* that Defendants misappropriated trade secrets and confidential
15 non-trade secret information.  On March 3, 2008, I-Flow served Plaintiff's Amended
16 Identification of Trade Secrets Misappropriated by Defendants Pursuant to C.C.P. § 2019.210
17 ("Statement").  Stahl Dec., Ex. G.  In the Statement, I-Flow discusses the following information:
18      (a) alleged trade secrets in paragraphs numbered 1-15 (Stahl Dec., Ex. G, pp. 64-68);
19      (b) alleged non-trade secret Confidential Technical Information (Stahl Dec., Ex. G, p. 68,
20 line 25 through p. 69, line 17); and
21      (c) alleged non-trade secret Confidential Business Information (Stahl Dec., Ex. G, p. 69,
22 line 18 through p. 70, line 7).

23      Defendants served multiple interrogatories asking I-Flow to "describe in detail" the
24 alleged trade secret and non-trade secret confidential information, any relevant confidentiality
25 agreements, and Apex' use of any confidential information.  The Interrogatories instruct that
26 "'DESCRIBE IN DETAIL' means provide all information in YOUR possession, custody or
27 control regarding the matter asked about.  When used for an agreement, also provide the
28 following:  provide all terms of the agreement, whether it is a written or oral agreement, the

PERONS involved in drafting and executing the agreement, the date of execution, and the term (duration) of the agreement.  When used for trade secret(s) related to a paragraph in the STATEMENT, also provide the following:  identify the number of trade secrets, state for each trade secret whether it is a compilation, provide for each trade secret all information that is part of the trade secret."  Stahl Dec., Ex. A, p. 4; Ex. B, p. 14.

      a.      <u>Interrogatories Asking for Details of Trade Secrets.</u>

Apex' Interrogatories Nos. 1-9 ask that I-Flow "describe in detail" the alleged trade secrets related to each of paragraphs numbered 1-9 of the Statement.  Stahl Dec., Ex. A, p. 8.  McGlothlin's Interrogatories Nos. 1-6 ask that I-Flow "describe in detail" the alleged trade secrets related to each of paragraphs numbered 10-15 of the Statement.  Stahl Dec., Ex. B, p. 18.

      b.      <u>Interrogatories Asking for Details of Non-Trade Secret Confidential Information.</u>

McGlothlin's Interrogatory No. 14 asks that I-Flow "describe in detail" the alleged non-trade secret Confidential Business Information.  Stahl Dec., Ex. B, p. 19.  McGlothlin's Interrogatory No. 15 asks that I-Flow "describe in detail" the alleged non-trade secret Confidential Technical Information.  Stahl Dec., Ex. B, p. 19.

      c.      <u>Interrogatories Asking for Details of Agreements Related to Confidential Information.</u>

I-Flow alleges that Defendants misused trade secrets and non-trade secret confidential information.  McGlothlin's Interrogatories Nos. 7-8 ask that I-Flow "describe in detail" any agreement related to the Second Cause of Action (trade secret misappropriation) and the Third Cause of Action (breach of confidence) under I-Flow's Second Amended Complaint in this case.  Stahl Dec., Ex. B, p. 18.

      d.      <u>Interrogatories Asking for Details of Apex' Alleged Use of I-Flow's Confidential Information.</u>

I-Flow alleges that Apex misused confidential information (trade secrets and non-trade secrets) of two kinds, *i.e.*, technical and business.  Apex' Interrogatories Nos. 11-12 ask that I-Flow "describe in detail" any aspect of Apex' technology (an infusion pump called Solace Pump)

and of Apex' business methods that I-Flow alleges embodies confidential information of I-Flow (trade secret or non-trade secret confidential information). Stahl Dec., Ex. A, p. 9.

### 2. I-Flow's Communications With the Food and Drug Administration Related to Apex' Second Counterclaim.

Apex alleges in Count Two of its Counterclaims in this case that I-Flow failed to abide by labeling requirements of the federal Food and Drug Administration related to I-Flow's infusion pump (the ON-Q Pump). Apex' Interrogatory No. 10 asks that I-Flow "describe in detail" any communications with the federal Food and Drug Administration related to Count Two of Apex' counterclaims. Stahl Dec., Ex. A, p. 9.

### 3. The Factual Basis of I-Flow's Claims against McGlothlin.

I-Flow alleges five Causes of Action against Apex and also against McGlothlin, who is a corporate officer of Apex. McGlothlin's Interrogatories Nos. 9-13 ask that I-Flow "state the complete factual basis" of the five Causes of Action under I-Flow's Second Amended Complaint against McGlothlin. Stahl Dec., Ex. B, pp. 18-19.

## ARGUMENT

**A.   I-Flow's Responses to Interrogatories Asking for Details of Trade Secrets.**

I-Flow alleges that Defendants misappropriated trade secrets. It is critical for Defendants to know the exact nature and extent of any trade secret information I-Flow alleges is at issue in this case. Defendants must have that information now so they can take discovery (including third party discovery) and prepare a defense.

I-Flow's Responses to Apex Interrogatories Nos. 1-9 and McGlothlin's Interrogatories Nos. 1-6 provide some information, but they do not "describe in detail" the alleged trade secrets as requested by Apex and McGlothlin. I-Flow's Responses do not provide "all information in [I-Flow's] possession, custody or control regarding the matter asked about" and it did not "identify the number of trade secrets, state for each trade secret whether it is a compilation, provide for each trade secret all information that is part of the trade secret." (*See*, definition of "describe in

detail" in Defendants' Interrogatories, *supra.*)  Also, for all interrogatories, I-Flow reserves the right to supplement at some later time.  I-Flow's Responses to Apex' Interrogatories Nos. 1-6 and 8 provide information that the alleged trade secrets "include," which implies that the alleged trade secrets "include" additional information that I-Flow fails to provide.  I-Flow's Response to McGlothlin's Interrogatory No. 6 includes reference to documents under Fed. R. Civ. P. 33(d), but I-Flow has so far failed to produce those documents.

I-Flow must know its own trade secrets; I-Flow must know what trade secret information it believes it communicated to Defendants.  I-Flow's counsel has been provided with documents on Apex' technology and business (Apex' documents labeled Bates Nos. APX00014 through APX06650, shipped under Federal Express tracking No. 468828910041049 on June 4, 2008).  I-Flow's counsel has also indicated months ago in discussion with Defendants' counsel in this case that I-Flow is in possession of samples of Apex' infusion pump at issue.

If I-Flow withholds information that it alleges to be an I-Flow trade secret at issue, it severely prejudices Defendants' ability to prepare a defense against I-Flow's allegations of trade secret misappropriation.  If I-Flow has already provided all trade secret information at issue in its Responses, then I-Flow should supplement its Responses to say so.  I-Flow should not be permitted to raise new allegations of trade secret misappropriation by identifying new trade secrets at a later time, for example, close to or even after the close of discovery, to make it all but impossible for Defendants to prepare a defense.

**B.     I-Flow's Responses to Interrogatories Asking for Details of Non-Trade Secret Confidential Information.**

I-Flow alleges that Defendants misused non-trade secret confidential information, which Defendants must also have to prepare a defense.  I-Flow's Responses to McGlothlin's Interrogatories Nos. 14-15 do not "describe in detail" the alleged non-trade secret confidential information as requested by McGlothlin.  I-Flow's Responses do not provide "all information in [I-Flow's] possession, custody or control regarding the matter asked about."  (*See*, definition of "describe in detail," *supra.*)  I-Flow's Responses to these interrogatories discuss "information regarding" certain subjects and "strategies for" certain things.  I-Flow should provide the actual

"information," rather than merely what the information is "regarding." I-Flow should also provide the actual "strategies," rather than only what the strategies are "for." Or, I-Flow's Responses refer to "data" that were allegedly confidential and provided to Defendants but I-Flow fails to provide the actual data. Or, I-Flow states that certain information is "included," implying that other information is missing. Also, I-Flow reserves the right to supplement its Responses at some later time, which may leave Defendants with no opportunity to prepare a defense.

As discussed for the alleged trade secrets, I-Flow must know what non-trade secret confidential information is at issue in this case. If I-Flow's Responses include all actual detail and data that I-Flow has provided to Defendants, then I-Flow should supplement its Responses to say so. If I-Flow is withholding information, it should be ordered to provide such information now.

### C. I-Flow's Responses to Interrogatories Asking for Details of Agreements Related to Confidential Information.

I-Flow's Responses to McGlothlin's Interrogatories Nos. 7-8 provide some information on alleged confidentiality agreements, but they do not "describe in detail" the alleged agreements as requested by McGlothlin. I-Flow's Responses do not provide "all information in [I-Flow's] possession, custody or control regarding the matter asked about" and it did not "provide all terms of the agreement, whether it is a written or oral agreement, the PERONS involved in drafting and executing the agreement, the date of execution, and the term (duration) of the agreement." (*See*, definition of "describe in detail," *supra.*) Also, I-Flow reserves the right to supplement its Responses at some later time.

The requested information must be within I-Flow's reach as I-Flow alleges confidentiality agreements between I-Flow and Defendants. I-Flow should therefore provide a complete response with all requested information concerning the alleged agreements. If I-Flow has provided all information on the alleged agreements, it should supplement its Responses to say so, so that Defendants may challenge I-Flow's allegation that any confidentiality agreements exist between I-Flow and either Apex or McGlothlin.

//

**D.  I-Flow's Responses to Interrogatories Asking for Details of Apex' Alleged Use of I-Flow's Confidential Information.**

I-Flow's Responses to Apex' Interrogatories Nos. 11-12 do not "describe in detail" the requested information, *i.e.*, any aspect Apex' infusion pump and Apex' business methods that allegedly embody I-Flow's confidential information.

I-Flow's Response to Interrogatory No. 11 alleges that Defendants "misappropriated valuable technical trade secrets while designing their own competing elastomeric infusion pump, including" information on various subjects.  I-Flow's Response does not provide any particular data or values within the various subjects that I-Flow believes constitute I-Flow confidential information and that I-Flow believes Apex misused in its infusion pump.  Also, I-Flow's use of the word "including" implies that the list of subjects is not complete either.

I-Flow's Response to Interrogatory No. 12 alleges that Defendants "misappropriated valuable business trade secrets while developing a business strategy and marketing its competing elastomeric infusion pump, including" information on various subjects.  I-Flow again fails to provide specifics and I-Flow again uses the word "including," implying that the list of subjects is not complete.

Apex' Interrogatories Nos. 11-12 are important for Apex to develop a defense and I-Flow should provide complete responses including all requested information.  The generic subjects listed by I-Flow leave Apex guessing what specific information or data Apex allegedly misused.  Defendants therefore ask that I-Flow must provide detailed information about all aspects of Apex' infusion pump and its business that I-Flow believes constitute misused confidential information of I-Flow.

**E.  I-Flow's Response to Interrogatory Asking for Communications with the Food and Drug Administration Related to Apex' Second Counterclaim.**

I-Flow's Response to Apex' Interrogatory No. 10 relies on documents under Fed. R. Civ. P. 33(d), but I-Flow has so far failed to produce those documents.  I-Flow should produce the documents.  I-Flow should also "describe in detail" any communications responsive to this interrogatory that are not conveyed through the documents I-Flow seeks to rely on.  If no

communication other than what is conveyed through the documents took place, then I-Flow should clearly say so in its Response.

### F. I-Flow's Responses to Interrogatories Asking for the Factual Basis of I-Flow's Claims Against McGlothlin.

I-Flow's Responses to McGlothlin's Interrogatories Nos. 9-13 largely discuss I-Flow's alleged factual basis for I-Flow's Causes of Action for both Defendants, rather than specifically for McGlothlin as requested in the Interrogatories. If I-Flow does not distinguish between Apex and McGlothlin, it should say so. I-Flow also fails to provide detail that I-Flow should include in its Responses (*e.g.*, which specific acts of McGlothlin does I-Flow rely on, which trade secrets or which confidential information did McGlothlin misuse, how did McGlothlin misuse any I-Flow information, to whom did McGlothlin disclose I-Flow information in violation of an obligation to I-Flow, how did an obligation of McGlothlin to I-Flow arise).

## CONCLUSION

Defendants thus move for an order compelling I-Flow to supplement its Responses to Defendants' Interrogatories.

Respectfully submitted,

DATED: July 25, 2008                STAHL LAW FIRM

By:   s/Norbert Stahl
      Norbert Stahl, Esq.

      Attorney for Defendants Apex Medical
      Technologies, Inc. and Mark McGlothlin

# CERTIFICATE OF SERVICE

I hereby certify that on July 25, 2008, I electronically filed the foregoing document entitled:

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL PLAINTIFF TO SUPPLEMENT RESPONSES TO FIRST SETS OF INTERROGATORIES.**

with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail address:

boris.zelkind@kmob.com  (Boris Zelkind).

I certify and declare under penalty of perjury under the laws of the Sate of California that the foregoing is true and correct.

Executed on July 25, 2008, at San Carlos, California.

By:   s/Norbert Stahl
      Norbert Stahl, Esq.

      Attorney for Defendants Apex Medical Technologies, Inc. and Mark McGlothlin