# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| I-FLOW CORPORATION, a Delaware corporation,,<br><br>                                  Plaintiff,<br>    vs.<br>APEX MEDICAL TECHNOLOGIES, INC., a California corporation, et al.,<br><br>                                Defendants.<br>_____<br>AND ALL RELATED COUNTERCLAIMS. | CASE NO. 07cv1200 DMS (NLS)<br><br>**ORDER CONSTRUING PATENT CLAIMS** |

This matter came before the Court for a claim construction hearing on July 8, 2008. Boris Zelkind appeared and argued on behalf of I-Flow Corporation ("Plaintiff" or "I-Flow"), and Norbert Stahl appeared and argued on behalf of Apex Medical Technologies, Inc. ("Apex") and Mark McGlothlin ("McGlothlin"). After a thorough review of the parties' claim construction briefs and all other material submitted in connection with the hearing, as well as a review of the Court's file, the Court issues the following order construing the disputed terms of the patents at issue in this case.

## I.
## BACKGROUND

There is one patent at issue in this case: United States Patent Number 5,284,481 ("the '481 Patent"). Generally, the '481 Patent describes an infusion device for medical use. The device consists

of (1) a support member, (2) a fluid reservoir, (3) a housing unit, (4) an inlet port and (5) an outlet port.  On June 29, 2007, Plaintiff filed the present Complaint against Defendant Apex alleging infringement of the '481 Patent.  Plaintiff alleges infringement of claims 1, 2, and 15 of the '481 Patent.

Apex filed an Answer and Counterclaim on September 14, 2007.  The original Counterclaim sought a declaratory judgment of non-infringement, invalidity, and unenforceability of the '481 Patent.  On October 26, 2007, Apex filed a First Amended Answer and Counterclaim in which it alleged three additional claims for unfair competition under federal, state and common law.

On November 27, 2007, Plaintiff filed a First Amended Complaint alleging additional claims for trade secret misappropriation, breach of confidence, and unfair competition, and naming McGlothlin as a Defendant.  Plaintiff filed a Second Amended Complaint on January 14, 2008, in which it realleged all of these claims.

Defendants filed a motion to stay this case on January 31, 2008, and a motion to dismiss the Second Amended Complaint on February 5, 2008, both of which the Court denied.

## II.

## DISCUSSION

Claim construction is an issue of law, *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996), and it begins "with the words of the claim." *Nystrom v. TREX Co., Inc.*, 424 F.3d 1136, 1142 (Fed. Cir. 2005) (citing *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)).  Generally, those words are "given their ordinary and customary meaning." *Id.* (citing *Vitronics*, 90 F.3d at 1582).  This "'is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention.'" *Id.* (quoting *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005)).  "The person of ordinary skill in the art views the claim term in the light of the entire intrinsic record." *Id.*  Accordingly, the Court must read the claims "'in view of the specification, of which they are a part.'" *Id.* (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995)).  In addition, "'the prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor

/ / /

limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be.'" *Id.* (quoting *Phillips*, 415 F.3d at 1318).

As stated above, there are three claims at issue in this case, independent claims 1 and 15 and dependent claim 2. The Court addresses the disputed claim terms below.

**A.      Claim 1**

Claim 1 of the '481 Patent provides:

> A compact portable apparatus for dispensing a liquid under pressure at a substantially constant flow rate over a period of time comprising:
>
> an elongated generally cylindrical support member;
>
> elongated elastic sleeve means mounted and sealingly secured at fixed spaced longitudinal positions on said support member for defining a substantially zero non-pressurized volume pressure reservoir for holding a liquid in a pressurized state for dispensing therefrom;
>
> housing means comprising collapsible non-stretchable housing means for containing said support member and said pressure reservoir for enabling said pressure reservoir to expand naturally and for confining said reservoir to fill concentrically about said support member;
>
> inlet means for introducing a liquid into said elastic pressure reservoir; and
>
> outlet means for dispensing liquid from said pressure reservoir to a selected site.

There are eight terms and phrases in claim 1 of the '481 Patent that the parties agree require construction. They are: (1) "elongated," (2) "elongated elastic sleeve means," (3) "secured at fixed spaced longitudinal positions," (4) "defining a substantially zero non-pressurized volume pressure reservoir," (5) "collapsible non-stretchable housing means," (6) "fill concentrically about said support member," (7) "inlet means," and (8) "outlet means."

    1.      "Elongated"

The first term at issue in claim 1 is "elongated." Plaintiff asserts this term should be construed to mean "drawn out" or "extended," while Defendants contend it means "having more length than width." Both of these proposals find support in the intrinsic evidence. In each of the figures depicting the support member, the support member is extended and appears longer than it is wide. However, there is nothing in the intrinsic evidence that requires that the support member be longer than it is wide. Accordingly, the Court finds that one of ordinary skill in the art, after reading the claims and

1 consulting the intrinsic evidence, would construe the term "elongated" to mean "drawn out" or
2 "extended."

3     2. <u>"Elongated elastic sleeve means"</u>

4 The next term at issue in the '481 Patent is "elongated elastic sleeve means." Plaintiff asserts
5 this term should be construed as "extended elastic membrane or bladder." Defendants dispute whether
6 the term "sleeve" includes "bladder."

7 The specification of the '481 Patent clearly uses the terms "membrane" and "bladder" to refer
8 to the "sleeve means." (*See* '481 Patent col. 2, lines 63-68; col. 3, lines 54-55; col. 4, lines 11-12.)
9 United States Patent Number 5,080,652 ("the '652 Patent"), which is incorporated into the '481
10 Patent, also repeatedly refers to a "bladder," (*see* '652 Patent, col. 1, lines 20-24, 52-59; col. 2, lines
11 38-41, col. 5, lines 31-33), and "membrane." (*See id.* at col. 5, lines 23-26, 29-31.)

12 In light of this intrinsic evidence the Court finds that one of ordinary skill in the art, after
13 reading the claims and consulting the intrinsic evidence, would construe the term "elongated elastic
14 sleeve means" as "extended elastic membrane or bladder."

15     3. <u>"Secured at fixed spaced longitudinal positions"</u>

16 The next phrase at issue in the '481 Patent is "secured at fixed spaced longitudinal positions."
17 Although the parties identified this phrase as being in dispute, their proposed constructions are
18 substantially the same. Accordingly, the Court finds that one of ordinary skill in the art, after reading
19 the claims and consulting the intrinsic evidence, would construe the phrase "secured at fixed space
20 longitudinal positions" to mean "secured at positions along the longitudinal axis of the support
21 member with space there between."

22     4. <u>"Defining a substantially zero non-pressurized volume pressure reservoir"</u>

23 The next phrase at issue in claim 1 of the '481 Patent is "defining a substantially zero non-
24 pressurized volume pressure reservoir." Plaintiff argues this phrase should be construed as "defining
25 a pressure chamber having a substantially zero fill volume when not pressurized," while Defendants
26 assert the phrase "refers to a pressure reservoir between the attachment points of the sleeve on the
27 support member that is substantially zero when non-pressurized." These proposed constructions are
28 / / /

1   substantially similar. The dispute centers on whether the pressure reservoir must be formed between
2   the attachment points, as Defendants suggest.

3   Defendants rely on the claim language to support their proposed construction. Specifically,
4   Defendants rely on the language that states the sleeve means is "secured" on the support member "for"
5   defining the pressure reservoir. Neither of these words, however, supports Defendants' proposal that
6   the pressure reservoir be between the attachment points. The same may be said of the claim language
7   as a whole.

8   Although this dispute appears to split hairs, the Court agrees with Plaintiff that Defendants'
9   proposed construction adds a limitation to the claim that is not warranted by the intrinsic evidence.
10  Accordingly, the Court finds that one of ordinary skill in the art would construe the phrase "defining
11  a substantially zero non-pressurized volume pressure reservoir" in accordance with Plaintiff's
12  proposed construction, which is "defining a pressure chamber having a substantially zero fill volume
13  when not pressurized."

14  5.    "Collapsible non-stretchable housing means"

15  The next term in the '481 Patent is "collapsible non-stretchable housing means." This is one
16  of the more hotly contested terms in the Patent with Plaintiff asserting that it means "a shell or cover
17  that is not rigid and cannot be permanently stretched, including elastic or semi-elastic materials," and
18  Defendants asserting it means "a housing that is collapsible and that cannot be stretched."

19  Defendants' proposed construction relies on three arguments. First, Defendants rely on the
20  plain meaning of the term, "non-stretchable," as something that cannot be stretched. Although this
21  is the plain meaning of the term in the abstract, the Court must consider the term in the context of the
22  Patent as a whole. The figures of the '481 Patent clearly depict a housing means that is capable of
23  stretching. Furthermore, the specification provides examples of materials that may be used as the
24  housing means, (*see* '481 Patent, col. 3, lines 7-11), all of which are capable of being stretched. (*See*
25  Decl. of Stephen Hessel in Supp. of Pl.'s Opening Claim Construction Br. at ¶6.)

26  Nevertheless, Defendants assert the housing means cannot be stretchable because then it would
27  fail to serve its purpose of protecting the elastic sleeve. There is no dispute that protection of the
28  elastic sleeve is one purpose of the housing means. However, there is nothing in the intrinsic evidence

to indicate that the protection afforded by the housing means is absolute. Indeed, the intrinsic evidence reflects the contrary. (*See* '481 Patent, col. 3, lines 11-13) ("This forms a simple inexpensive compact unit with *a certain amount of protection* for the elastic reservoir.") (emphasis added). It also goes on to describe other examples of material for the housing means, which would be "tougher" than the examples mentioned above. (*Id.* at col. 3, lines 14-20.)

Defendants' final argument in support of their proposed construction of "non-stretchable" relies on the prosecution history of the '481 Patent. Defendants rely on an amendment in which they contend Plaintiff distinguished the "collapsible non-stretchable housing means" of the '481 Patent from a "flexible" sleeve in a prior art patent. Defendants' representation of this amendment, however, is incorrect. Plaintiff was not drawing a distinction between its housing means and the prior art flexible sleeve. Rather, as Plaintiff points out, it was simply describing the prior art invention.

Based on this Court's review of the intrinsic and extrinsic evidence, the Court finds that one of ordinary skill in the art would construe the term "collapsible non-stretchable housing means" in accordance with Plaintiff's proposed construction.

6. "Fill concentrically about said support member"

The next phrase at issue in claim 1 of the '481 Patent is "fill concentrically about said support member." Plaintiff asserts this phrase should be construed as "to fill evenly in a spherical manner from the support member," while Defendants contend it means that "the pressure reservoir fills so that it is concentric with the support member." The primary dispute here is whether the reservoir must fill concentrically with the housing means or the support member.

As with the preceding term, Defendants' argument is more consistent with the plain meaning of the claim language. However, Defendants' plain meaning argument fails to consider the intrinsic evidence. Specifically, Defendants' argument fails to account for the preferred embodiment of the '481 Patent, which depicts the reservoir as being concentric with the housing means, not the support member. Because an interpretation of claim language that excludes the preferred embodiment "is rarely, if ever correct[,]" *Vitronics*, 90 F.3d at 1583, the Court rejects Defendants' proposed construction of this phrase. Instead, the Court finds that one of ordinary skill in the art would construe

///

the phrase "fill concentrically about said support member" in accordance with Plaintiff's proposed construction.

7. "Inlet means" / "Outlet means"

The last two terms at issue in claim 1 of the '481 Patent are "inlet means" and "outlet means." Plaintiff argues these terms should be construed as "inlet port" and "outlet port," while Defendants assert they should be construed as means-plus-function elements pursuant to 35 U.S.C. § 112(6).

As an initial matter, the Court finds Defendants waived their argument that these terms are governed by Section 112(6).[1] The Patent Local Rules require that parties identify any such claim terms in their preliminary invalidity contentions. *See* Patent Local Rule 3.3.c. Defendants' counsel asserts that he did so in this case, (*see* Decl. of Norbert Stahl in Supp. of Defs.' Reply Br. at ¶3), but the record does not support his assertion.[2] Because Defendants failed to identify these terms as means-plus-function elements in their preliminary invalidity contentions, that argument is waived.

Turning to the substantive construction of these terms, the Court agrees with Plaintiff that one of ordinary skill in the art, after reading the claims and consulting the intrinsic evidence, would construe the term "inlet means" as "inlet port" and the term "outlet means" as "outlet port."

**B.     Claim 15**

The only claim terms that remain to be construed are in claim 15 of the '481 Patent. This claim recites:

> A compact collapsible infusion apparatus for dispensing a liquid under pressure at a predetermined substantially constant flow rate over a period of time comprising:
>
> an elongated generally cylindrical support member having inlet means including an inlet port in one end of said member, and outlet means including an outlet port in the other end of said member;
>
> elongated elastic sleeve means mounted in non-stretched surface contact and sealingly secured at fixed space longitudinal positions on said support member for defining a

---

[1] This finding applies equally to the terms "inlet means including an inlet port in one end of said member" and "outlet means including an outlet port in the other end of said member" in claim 15.

[2] The Court reminds Defendants' counsel that Federal Rule of Civil Procedure 11(b)(3) requires that "factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]" Fed. R. Civ. P. 11(b)(3).

      substantially zero non-pressurized volume pressure reservoir for holding a liquid in a pressurized state for dispensing therefrom;

      first housing means including a collapsible shell enclosing said support member and said pressure reservoir, said housing having a size and shape for enabling said pressure reservoir to expand naturally and for confining said reservoir to fill concentrically about said support member;

      inlet means in one end of said support member for introducing a liquid into said elastic pressure reservoir; and

      outlet means in the other end of said support member for dispensing liquid from said pressure reservoir to a selected site.

The parties agree that three phrases in this claim require construction: (1) "inlet means including an inlet port in one end of said member," (2) "outlet means including an outlet port in the other end of said member," and (3) "enclosing said support member and said pressure reservoir."

      1.    <u>"Inlet means including an inlet port in one end of said member"</u>

Plaintiff asserts this phrase should be construed as "an inlet port that extends from one side of the support member." Defendants argue it should be construed to mean: "The inlet means is on one end of the support member. The inlet has an inlet port that communicates with a coaxial passage and a transverse passage with a valve. The transverse passage communicates with the interior of the elastic reservoir."

Of these competing constructions, Plaintiff's is more consistent with the Court's construction of the term "inlet means," and the intrinsic evidence as a whole. Aside from the term "inlet means," however, the remainder of the phrase does not require construction. Accordingly, the Court finds that one of ordinary skill in the art, after reading the claims and consulting the intrinsic evidence, would construe the phrase "inlet means including an inlet port in one end of said member" as "inlet port in one end of said member."

      2.    <u>"Outlet means including an outlet port in the other end of said member"</u>

The parties' proposed constructions for this phrase are similar to those for the preceding phrase. Plaintiff asserts this phrase should be construed as "an outlet port that extends from the side of the support member opposite the inlet port." Defendants argue it means: "The outlet means is on the other end of the support member (opposite end from the inlet means). The outlet communicates with a

1   ///

2   passage that extends coaxially from the other end of the support member. The outlet communicates
3   through a cross bore with the interior of the elastic reservoir."

4   As with the preceding phrase, Plaintiff's proposed construction is more consistent with the
5   Court's construction of "outlet means" and the intrinsic evidence. However, Plaintiff's construction
6   rewrites the remainder of the claim language instead of applying its plain and ordinary meaning.
7   Accordingly, the Court finds that one of ordinary skill in the art, after reading the claims and
8   consulting the intrinsic evidence, would construe the phrase "outlet means including an outlet port in
9   the other end of said member" as "outlet port in the other end of said member."

10  3.   "Enclosing said support member and said pressure reservoir"

11  The last disputed phrase in the '481 Patent is "enclosing said support member and said
12  pressure reservoir." Plaintiff argues this phrase should be construed to mean "substantially
13  surrounding the support member and pressure chamber," while Defendants assert it "refers to the
14  housing enclosing (surrounding on all sides) the support member and the pressure reservoir."

15  As is apparent from these competing constructions, the dispute here is over the word
16  "enclosing." Defendants' proposed construction of this word is consistent with the plain and ordinary
17  meaning. As Plaintiff points out, however, this meaning is not consistent with the intrinsic evidence.
18  This evidence supports Plaintiff's proposed construction. Accordingly, the Court finds that one of
19  ordinary skill in the art, after reading the claims and consulting the intrinsic evidence, would construe
20  the phrase "enclosing said support member and said pressure reservoir" as "substantially surrounding
21  the support member and pressure chamber."

## III.

## CONCLUSION

24  For the reasons stated above, the disputed terms are interpreted as set forth in this Order.
25  **IT IS SO ORDERED**.
26  DATED: July 25, 2008

_____
HON. DANA M. SABRAW
United States District Judge

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28