1  Steven J. Nataupsky (State Bar No. 155,913)
   snataupsky@kmob.com
2  Boris Zelkind (State Bar No. 214,014)
   boris.zelkind@kmob.com
3  Ali S. Razai (State Bar No. 246,922)
   ali.razai@kmob.com
4  KNOBBE, MARTENS, OLSON & BEAR, LLP
   550 West C Street, Suite 1200
5  San Diego, CA 92101
   Telephone: (619) 235-8550
6  Facsimile:  (619) 235-0176

7  Attorneys for Plaintiff and Counter-Defendant
   I-FLOW CORPORATION
8

9           IN THE UNITED STATES DISTRICT COURT

10          FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| 11 | I-FLOW CORPORATION, a Delaware corporation, | Case No. 07-cv-1200 DMS (NLS) |
|---|---|---|
| 12 | Plaintiff/Counter-Defendant. | **I-FLOW'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL PLAINTIFF TO SUPPLEMENT RESPONSES TO FIRST SETS OF INTERROGATORIES** |
| 13 | v. | |
| 14 | APEX MEDICAL TECHNOLOGIES, INC., a California corporation, MARK MCGLOTHLIN, an Individual, | |
| 15 | | Date:  August 26, 2008 |
| 16 | Defendants/Counter-Claimants. | Time:  1:30 pm |
| 17 | | Courtroom F, 1st Floor |
| 18 | | Honorable Nita L. Stormes |
| 19 | | **NON-CONFIDENTIAL VERSION** |
| 20 | I-FLOW CORPORATION, a Delaware corporation, | |
| 21 | Plaintiff/Counter-Defendant | |
| 22 | v. | |
| 23 | ZONE MEDICAL LLC, a California limited liability company, | |
| 24 | Defendant/Counter-Claimant. | |

**TABLE OF AUTHORITIES**

Page #s

I. INTRODUCTION ................................................................................................. 1

II. STATEMENT OF FACTS .................................................................................... 1

III. ARGUMENT ......................................................................................................... 2

    A. I-Flow Provided Detailed Responses To Each of Defendants' Interrogatories ............................................................................................ 2

    B. Defendants' Argument That I-Flow May Not Reserve A Right To Supplement Its Responses Is Contrary to the Federal Rules of Civil Procedure ............................................................................................... 10

IV. CONCLUSION ................................................................................................... 11

## TABLE OF AUTHORITIES

**Page #s**

*Adobe Sys. v. St. Paul Fire & Marine Ins. Co.*,
    No. C07-00385, 2008 WL 1342877 (*2 N.D. Cal. 2008) ................................. 4, 6, 7, 9

*In re Convergent Technologies Sec. Litigation*,
    108 F.R.D. 328 (D.C.Cal 1985) ............................................................................ 8, 10

### OTHER AUTHORITIES

Fed. R. Civ. P. 26 ........................................................................................................ 4, 10, 11

Moore's Fed. Prac. F3d §26.60 ........................................................................................ 4, 5

Moore's Fed. Prac. F3d §33.106 ......................................................................................... 10

Moore's Fed. Prac. F3d §37.22 ............................................................................................ 4

5782089_1
081208

Plaintiff I-Flow Corporation ("I-Flow") submits this Opposition to Defendants' Motion To Compel Plaintiff To Supplement Responses To First Sets Of Interrogatories filed by Defendants Apex Medical Technologies ("Apex") and Mark McGlothlin ("McGlothlin") (collectively "Defendants").

## I. INTRODUCTION

Defendants' motion to compel is simply without merit. I-Flow has already provided detailed responses to every one of Defendants' interrogatories, and I-Flow cannot be precluded from supplementing its discovery responses if it discovers additional responsive information. First, I-Flow's responses contain substantial detail beyond that of its Amended 2019 Statement, incorporating specific numerical values and technical information where appropriate. Second, I-Flow has not only a right, but an ongoing obligation to supplement its responses under the Federal Rules of Civil Procedure. Defendants' complaint that I-Flow may supplement its responses flies in the face of the Federal Rules. For these reasons, this Court should deny Defendants' motion.

## II. STATEMENT OF FACTS

This case involves I-Flow's causes of action for patent infringement action against Defendants for infringing I-Flow's U.S. Patent No. 5,284,481 ("the '481 patent"), misappropriation of trade secrets, and related business torts.

On December 7, 2007, I-Flow served its 2019 statement on Defendants. On January 1, 2008, Defendants moved to compel I-Flow to provide additional details with respect to its statement. The Court granted Defendants' motion, and on March 3, 2008, I-Flow provided an amended 2019 statement, which disclosed additional detail regarding I-Flow's trade secrets and distinguished those trade secrets from information known to the public. Defendants again moved for an order requiring I-Flow to supplement its amended 2019 statement. The Court denied Defendants' motion, ruling on May 23, 2008 that I-Flow's amended 2019 statement provided sufficient detail to satisfy Cal. Code of Civil Procedure §2019.210.

On May 28, 2008, within a week of this Court's ruling that I-Flow's 2019 statement was sufficient, Apex and McGlothlin each served I-Flow with a set of contention

interrogatories. Fifteen of those interrogatories requested that I-Flow "describe in detail" each of the trade secrets it asserts in this case. In its responses, I-Flow answered each and every interrogatory, providing additional details beyond those in its Amended 2019 Statement, including specific numerical values where appropriate.

After I-Flow served its responses, Defendants took a series of depositions. On July 17, 2008, Defendants took a 30(b)(6) deposition of I-Flow. On July 23, 2008, Defendants deposed I-Flow's president. In these depositions, Defendants asked the witnesses detailed questions regarding I-Flow's interrogatory responses. For each response, Defendants asked the witnesses whether I-Flow's answers to the interrogatories were complete and whether there was any additional information. The witnesses confirmed the interrogatory responses and provided additional details where necessary.

Despite I-Flow's amended 2019 statement, which the Court found sufficient, I-Flow's interrogatory responses, which provided substantial additional detail, and the depositions, in which the witnesses confirmed I-Flow's responses and provided additional details, Defendants now move once again for further information. In addition, Defendants also suggest that this Court should bar I-Flow from supplementing its responses in the future. Def's Memo. at 2. Because I-Flow has properly responded to the interrogatories, and is permitted to supplement under the Federal Rules, this Court should deny Defendants' Motion.

### III. ARGUMENT

#### A. I-Flow Provided Detailed Responses To Each of Defendants' Interrogatories

Contrary to Defendants' assertions, I-Flow has provided a detailed response to each one of Defendants' interrogatories. Although Defendants' interrogatories consisted of vague, sweeping queries asking I-Flow to describe in detail nearly every aspect of its complaint, I-Flow responded by providing detailed information with respect to each inquiry. Still, Defendants are not satisfied with I-Flow's responses, and seek an order to compel I-Flow to supplement its responses. In so moving, Defendants never analyze I-Flow's previous production to support their contention that I-Flow has withheld details from its response. In

///

fact, I-Flow's Response is thorough and complete, and additional details were disclosed during Defendants' depositions.

### a. **I-Flow Provided Detailed Responses to the Trade Secret Interrogatories**

I-Flow's responses to Apex Interrogatories Nos. 1-9 and McGlothlin Interrogatories Nos. 1-6 (the "Trade Secret Interrogatories") provide detailed information with respect to each trade secret inquired about in the respective interrogatories. I-Flow has made its disclosures in good faith with the belief that its responses provide a detailed description of the material I-Flow considers its trade secrets that were misused by Defendants. At this time, I-Flow has no knowledge of any relevant trade secret for which it has not provided such a detailed description.

I-Flow's amended 2019 statement gave a detailed account of I-Flow's asserted trade secrets and how those trade secrets are distinct from publicly known information. Declaration of Ali S. Razai, Ex. 2. In its interrogatory responses, I-Flow provided further detail beyond that in its Amended 2019 Statement, including specific numerical values and other detailed technical information. REDACTED Declaration of Norbert Stahl, Ex. C at 3. This high level of specific detail is characteristic of I-Flow's Responses. Defendants then took depositions in which Defendants asked the witnesses to confirm I-Flow's Responses and to furnish any other related information.

For example, on July 17, 2008, Defendants took a deposition of one of I-Flow's 30(b)(6) witnesses, Gary Aurin, who was designated to testify on various topics, including topics 5-8, relating to I-Flow's trade secrets. Razai Dec., Ex. 1 at ¶ 6. In the deposition, Mr. Aurin reiterated much of the information disclosed in I-Flow's interrogatories. Due to the advantages of the deposition format, Mr. Aurin was also able to answer some of Defendants' more detailed questions which provided Defendants with additional information beyond that

which was responsive to Defendants' requests. This is precisely the reason the Federal Rules contemplate multiple discovery mechanisms. Defendants have had considerable opportunity to learn about the issues in this case, and will continue to do so through further depositions and further review of I-Flow's document production. The depositions confirmed that I-Flow's responses are accurate and yielded few additional details.

The Federal Rules of Civil Procedure have established proportionality and good faith requirements on discovery requests. *See*, Fed. R. Civ. P. 26(b)(2)(C). ("...the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rules if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.")

"[T]he proportionality and good faith requirements are sources of significant restrictions of motions to compel even when the discovery sought is relevant and not privileged." Moore's Fed. Prac. 3d §37.22[2][d]. "A court must limit the frequency or extent of use of the discovery methods otherwise permitted under the Federal Rules of Civil Procedure and by any local rule if the discovery sought is unreasonably cumulative or duplicative". Moore's Fed. Prac. 3d. §26.60[2]; *see, e.g., Adobe Sys. v. St. Paul Fire & Marine Ins. Co.*, No. C07-00385, 2008 WL 1342877, *2 (N.D. Cal. 2008) ("the Court finds that the Defendant already provided complete responses [to the relevant interrogatory] and any other further responses would be unreasonably duplicative").

I-Flow has now provided a detailed account of the trade secrets it is asserting in this case. In its interrogatory responses, I-Flow provided specific details including numeric information that goes beyond what the Court already ruled was sufficient in I-Flow's amended

///

2019 statement. Just as in *Adobe*, any further responses that I-Flow might give at this time would simply repeat previously disclosed information and would be unreasonably duplicative.

The discovery process is intended to decrease the cost of litigation, not increase it. Courts should "limit the frequency or extent of use of the discovery methods otherwise permitted under the Federal Rules of Civil Procedure and by any local rule if the discovery sought is available from another source that is more convenient, less burdensome, or less expensive." Moore's Fed. Prac. 3d. §26.60[3]. To protect litigants from unnecessary expense, courts should "limit the frequency or extent of use of the discovery methods otherwise permitted under the Federal Rules of Civil Procedure and by any local rule if the party seeking discovery has already had ample opportunity through discovery in the action to obtain the information sought." Moore's Fed. Prac. 3d. §26.60[4].

Defendants have already been provided with I-Flow's amended 2019 statement, its detailed responses to the interrogatories, and have already taken depositions in which Defendants specifically asked questions about I-Flow's interrogatory responses and trade secret assertions. To the extent that any relevant specific details were not included in I-Flow's responses, Defendants have ample opportunity to seek that information during its depositions, and the Defendants took the opportunity to do so. An order requiring I-Flow to produce yet another account of its trade secrets would be unduly burdensome and duplicative. To the extent that the deponents did provide supplemental details, those details have been captured in deposition transcripts and are already in Defendants' possession.

   **b.**  **I-Flow Provided Detailed Responses to the The Confidential Information Interrogatories**

I-Flow's responses to McGlothlin's Interrogatories Nos. 14-15 (the "Confidential Information Interrogatories") discuss specific confidential business and technical information that I-Flow communicated to Defendants. In I-Flow's responses to the Confidential Information Interrogatories, I-Flow described each of the specific pieces of business and technical information that I-Flow asserts in this case.

/ / /

-5-

1  In its responses, I-Flow described in detail the confidential information that Defendants
2  misappropriated. For example, I-Flow disclosed that it communicated **REDACTED**
4  Stahl Dec., Ex. D at 21. This level of detail is characteristic of I-Flow's
5  responses to the Confidential Information Interrogatories, and is sufficient to apprise
6  Defendants of the exact nature of I-Flow's claim.

7  I-Flow has already provided detailed responses to the Confidential Information
8  Interrogatories. Moreover, Defendants deposed I-Flow on this same material. Mr. Aurin, was
9  designated to testify on topics 13-16, relating to I-Flow's non-trade secret confidential technical
10 information. Razai Dec., Ex. 1 at 6-7. In the deposition, Defendants asked Mr. Aurin
11 questions concerning I-Flow's responses and Mr. Aurin's own understanding of the
12 confidential information. Mr. Aurin reiterated much of the information present in I-Flow's
13 interrogatories and provided additional details where necessary.

14 Defendants' motion should be denied because the information sought is available from
15 a less burdensome source; detailed descriptions are already available in I-Flow's interrogatory
16 responses and statements and within the deposition transcripts. Moore's Fed. Prac. 3d.
17 §26.60[3]. If the Court were to grant Defendants' motion, any additional response I-Flow
18 could provide would only reiterate material already present in I-Flow's responses and the
19 deposition transcripts. Therefore, as in *Adobe*, the Court should deny Defendants' motion.
20 *Adobe*, 2008 WL 1342877 (N.D. Cal. 2008).

21         c.  **I-Flow Provided Detailed Responses to the Confidentiality**
22             **Agreement Interrogatories**

23 I-Flow's responses to McGlothlin's Interrogatories Nos. 7-8 (the "Confidentiality
24 Agreement Interrogatories") specifically detail the occasions on which McGlothlin and Apex
25 entered into confidentiality agreements relevant to this action. In I-Flow's responses to the
26 Confidentiality Agreement Interrogatories, I-Flow identified each of the relevant agreements
27 with sufficient detail to apprise Defendants of the agreements upon which I-Flow is relying.
28 / / /

I-Flow laid out exactly which agreements it refers to in its complaint. Specifically, I-Flow indicated each agreement with specificity, [REDACTED] and each of the other agreements specified in I-Flow's responses. Stahl Decl., Ex. D at 9-12.

Moreover, Defendants deposed I-Flow about these agreements. Roger Massengale was designated as I-Flow's 30(b)(6) witness with respect to topic 17, which relates to confidentiality agreements. Razai Dec., Ex. 1 at ¶ 8. During the deposition, Defendants asked Mr. Massengale questions about both I-Flow's responses to the Confidentiality Agreement Interrogatories and I-Flow's knowledge of any other agreements resulting in an obligation of confidentiality by Defendants to I-Flow. Mr. Massengale verified I-Flow's responses and provided additional detail where necessary.

Thus, I-Flow's disclosures in its responses and deposition transcripts give a detailed account of the agreements. If the Court were to grant Defendants' motion, any additional response I-Flow could provide would only reiterate material already present in these materials. Accordingly, the Court should deny Defendants' motion. *Adobe*, 2008 WL 1342877 (N.D. Cal. 2008).

  d.  **I-Flow Provided Detailed Responses to the Apex's Misappropriation Interrogatories**

I-Flow's responses to Apex's Interrogatories Nos. 11-12 (the "Apex's Misappropriation Interrogatories") generally discuss the ways in which Defendants misappropriated and misused I-Flow's trade secret and non-trade secret confidential information in creating their products and business methods. I-Flow has described in detail how Defendants misappropriated I-Flow's trade secret and confidential information

In particular, I-Flow indicated that it Defendants misappropriated a long list of items, including modulus values at particular elongation percentages, ranges of acceptable tensile strength of the elastomeric bladders, unique ranges of elongation of the elastomeric bladders, I-

Flow's sales infrastructure specifically designed to market pain management systems, I-Flow's analysis of target health care sectors, and many other items constituting valuable confidential information. Stahl Decl., Ex. C at 12.

I-Flow also disclosed that Defendants misused I-Flow's trade secret and confidential information during development of its product and business plan. Defendants may dispute that they gained an improper advantage by misappropriating I-Flow's confidential information; however, the misuse is supported by

**REDACTED**

Additionally, Apex's Misappropriation Interrogatories primarily concern I-Flow's allegations about Defendants' own actions. Courts have found such interrogatories unduly burdensome, especially when discovery is incomplete. *In re Convergent Technologies Sec. Litigation*, 108 F.R.D. 328, 337-338 (D.C.Cal 1985)("at least in cases where defendants presumably have access to most of the evidence about their own behavior, it is not at all clear that forcing plaintiffs to answer these kinds of questions, early in the pretrial period, is sufficiently likely to be productive to justify the burden that responding can entail."). I-Flow has provided a detailed account of Defendants' improper behavior. Discovery is ongoing, and Defendants are still in sole possession of most of the evidence. Therefore, requiring I-Flow to provide more detail as to Defendants' own actions would create an undue burden.

Moreover, Defendants deposed I-Flow on this same material. Mr. Aurin was designated to testify on topics 13-16, relating to I-Flow's non-trade secret confidential technical information include Defendants' use of that information. Razai Dec., Ex. 1 at ¶¶ 6-7. In the deposition, Defendants asked Mr. Aurin questions concerning I-Flow's responses and Mr. Aurin's own understanding of how Defendants misused I-Flow's confidential information. Mr. Aurin reiterated much of the information present in I-Flow's interrogatories and provided additional details where necessary.

/ / /

In its responses, I-Flow has given a detailed account of each of the items of confidential information it believes Defendants have misappropriated. An order requiring I-Flow to produce yet another account of its trade secrets would be unduly burdensome and duplicative. *Adobe*, 2008 WL 1342877 (N.D. Cal. 2008). To the extent that the deponents did provide supplemental details, those details have been captured in deposition transcripts and are already in Defendants' possession.

### e. **I-Flow Provided Detailed Responses to the FDA Interrogatory**

Apex's Interrogatory No. 10 (the "FDA Interrogatory") seeks information relating to alleged misleading statements by I-Flow to the Food and Drug Administration ("FDA"). I-Flow has denied making any such statements to any governmental agency, and is therefore not aware of any responsive information. Therefore, that there are no communications relevant to the FDA Interrogatory. Notwithstanding, I-Flow has agreed to make available for inspection documents relating to its submissions to the FDA.

Defendants complain that I-Flow had not yet, at the time Defendants filed this motion, produced these documents. However, on July 30, 2008, Defendants' counsel inspected relevant regulatory documents at the offices of Knobbe, Martens, Olson, & Bear, LLP, in Irvine, California. Discovery is ongoing, and I-Flow has been working diligently to provide additional responsive information to Defendants' requests.

### f. **I-Flow Provided Detailed Responses to the McGlothlin Contentions**

I-Flow's responses to McGlothlin Interrogatories Nos. 9-13 (the "McGlothlin Contentions") generally discuss the ways in which I-Flow believes Defendants have acted unlawfully to harm I-Flow's interests. I-Flow's responses to these interrogatories provide I-Flow a detailed description of the primary and material facts of I-Flow's case against Defendants as I-Flow understands them at this early stage.

Defendants argue that I-Flow's responses to these interrogatories are insufficient because they fail to distinguish between McGlothlin and Apex. I-Flow's responses are written to distinguish between the actions of McGlothlin and Apex where I-Flow believes that the two defendants acted separately. It is I-Flow's belief, however, that many of Defendants' unlawful

actions occurred in concert. It is I-Flow's understanding that in those circumstances, McGlothlin acted on behalf of Apex or directed Apex to act. Thus, where I-Flow refers to "Defendants" in its responses to the McGlothlin Contentions, I-Flow understands that McGlothlin acted in concert with Apex.

Additionally, the McGlothlin Contentions primarily concern I-Flow's allegations concerning Defendants' own actions. Discovery is ongoing, and Defendants are still in sole possession of most of the relevant evidence. Therefore, requiring I-Flow to provide more detail as to Defendants' own behavior would create an undue burden. See, *In re Convergent*, 108 F.R.D. at 337-338.

I-Flow objected to the McGlothlin Contentions as overly broad, unduly burdensome, and premature to the extent that they require I-Flow to distinguish between the actions of the two Defendants at this stage in the discovery process. Stahl Dec., Ex. D at 12-17. I-Flow's responses to the McGlothlin Contentions are sufficient.

**B.   Defendants' Argument That I-Flow May Not Reserve A Right To Supplement Its Responses Is Contrary to the Federal Rules of Civil Procedure**

Defendants, throughout their motion, complain that I-Flow has reserved its right to supplement its answers in case it learns of new responsive information. Under the Federal Rules, I-Flow has not only a right, but an obligation, to supplement its responses with any new responsive information it may uncover in the case. Fed. R. Civ. P. 26(e).

The Rules require that initial disclosures, such as responses to interrogatories, be complete and detailed. Fed. R. Civ. P. 26(a); *see generally*, 7 Moore's §33.106. However, they also contemplate that it may not always be possible to provide a complete and accurate response at the outset. For this reason, Rule 26 requires, *inter alia*, a party who has responded to an interrogatory to supplement or correct its disclosure or response in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process. Fed. R. Civ. P. 26(e)(1)(A).

/ / /

When I-Flow included in its Responses a reservation of its right to supplement its responses, it did not attempt to evade its disclosure responsibilities. Rather, it affirmed its knowledge of, and commitment to, its obligations under the Federal Rules. Defendants' suggestion that supplementation is improper, or perhaps should even be barred, is utterly baseless.

## IV. CONCLUSION

For the foregoing reasons, I-Flow respectfully requests that this Court DENY Defendants' Motion to Compel Supplemental Interrogatory Responses in its entirety.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: August 12, 2008

By: s/Ali S. Razai
Steven J. Nataupsky
Boris Zelkind
Ali S. Razai

Attorneys for Plaintiff and Counter-Defendant
I-FLOW CORPORATION

# CERTIFICATE OF SERVICE

I hereby certify that on August 12, 2008, I caused the **I-FLOW'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL PLAINTIFF TO SUPPLEMENT RESPONSES TO FIRST SETS OF INTERROGATORIES [NON-CONFIDENTIAL VERSION]** to be electronically filed with the Clerk of the Court using the CM/ECF system which will send electronic notification of such filing to the following person(s):

Ralph B. Kalfayan, Esq.
KRAUSE, KALFAYAN, BENINK & SLAVENS LLP
rkalfayan@kkbs-law.com

Norbert Stahl, Esq.
STAHL LAW FIRM
nstahl@patentlawservice.com

I certify and declare under penalty of perjury under the laws of the State of California that I am employed in the office of a member of the bar of this Court at whose direction the service was made, and that the forgoing is true and correct.

Executed on August 12, 2008, at San Diego, California.

*Megan Ptacin*
Megan Ptacin

5778881
081208