Steven J. Nataupsky (State Bar No. 155,913)
snataupsky@kmob.com
Boris Zelkind (State Bar No. 214,014)
boris.zelkind@kmob.com
Ali S. Razai (State Bar No. 246,922)
ali.razai@kmob.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
550 West C Street, Suite 1200
San Diego, CA 92101
Telephone: (619) 235-8550
Facsimile:  (619) 235-0176

Attorneys for Plaintiff and Counter-Defendant
I-FLOW CORPORATION

# IN THE UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| I-FLOW CORPORATION, a Delaware corporation,<br><br>　　　　Plaintiff/Counter-Defendant.<br><br>　　v.<br><br>APEX MEDICAL TECHNOLOGIES, INC., a California corporation, MARK MCGLOTHLIN, an Individual,<br><br>　　　　Defendants/Counter-Claimants. | Case No. 07-cv-1200 DMS (NLS)<br><br>**I-FLOW'S CLAIM CONSTRUCTION BRIEF REGARDING THE REEXAMINED CLAIMS OF U.S. PATENT NO. 5,284,481**<br><br>Date:  Special Briefing Schedule Ordered<br>Time:  N/A<br>Courtroom 10, 2nd Floor<br>Honorable Dana M. Sabraw |
| I-FLOW CORPORATION, a Delaware corporation,<br><br>　　　　Plaintiff/Counter-Defendant<br><br>　　v.<br><br>ZONE MEDICAL LLC, a California limited liability company,<br><br>　　　　Defendant/Counter-Claimant. | |

## I. INTRODUCTION

Defendants have requested that the Court construe the language added to U.S. Patent 5,284,481 ("the '481 patent") during reexamination. However, the clarifying amendment, including added claim terms "loosely positioned" and "defining a chamber," which are not technical or specialized terms of art, does not require elaborate interpretation. The meaning of the newly-added claim language is readily apparent to a lay person and should carry its plain and ordinary meaning. As apparent from the drawings in the '481 patent, the collapsible housing must necessarily be loosely positioned, i.e., not taut, around the elastic bladder defining a chamber or space therebetween. Accordingly, claim construction in this context only requires application of the ordinary meanings to these commonly understood words. It is important to note that in the two weeks since Defendants requested the Court to construe the added claim language, Defendants have not responded to I-Flow's repeated requests for indication whether Defendants agree with I-Flow's proposed construction or whether Defendants have a different construction that they intend to propose to the Court. Thus, I-Flow files this brief not knowing what Defendants' proposed construction is or even if there is a dispute about the meaning of the added claim language.

## II. BACKGROUND

On July 14, 2009, the United States Patent and Trademark Office ("PTO") issued a reexamination certificate for the '481 patent that incorporated I-Flow's clarification of a feature already inherent in originally issued claims. Zelkind Decl., Ex. 1. To clarify that the collapsible housing of the '481 patent is a separate and distinct structure from the multi-layer bladder assembly, I-Flow amended the claims by pointing out that the collapsible housing must be loosely positioned over the bladder assembly, defining a chamber therebetween. Accordingly, Claim 1 of the '481 Patent was amended as follows:

> A compact portable apparatus for dispensing a liquid under pressure at a substantially constant flow rate over a period of time comprising:
> an elongated generally cylindrical support member;
> elongated elastic sleeve means mounted and sealingly secured at fixed spaced longitudinal positions on said support member for defining a substantially zero non-pressurized volume pressure

> reservoir for holding a liquid in a pressurized state for dispensing therefrom;
> housing means comprising collapsible non-stretchable housing means for containing said support member and said pressure reservoir for enabling said pressure reservoir to expand naturally and for confining said reservoir to fill concentrically about said support member<u>, said collapsible non-stretchable housing means loosely positioned around said sleeve means and defining a chamber between said sleeve means and said collapsible non-stretchable housing means</u>;
> inlet means for introducing a liquid into said elastic pressure reservoir; and
> outlet means for dispensing liquid from said pressure reservoir to a selected site.

Zelkind Decl., Ex. 1.

Similarly, Claim 15 of the '481 Patent was amended as follows:

> A compact collapsible infusion apparatus for dispensing a liquid under pressure at a predetermined substantially constant flow rate over a period of time comprising:
> an elongated generally cylindrical support member having inlet means including an inlet port in one end of said member, and outlet means including an outlet port in the other end of said member;
> elongated elastic sleeve means mounted in non-stretched surface contact and sealingly secured at fixed spaced longitudinal positions on said support member for defining a substantially zero non-pressurized volume pressure reservoir for holding a liquid in a pressurized state for dispensing therefrom;
> first housing means including a collapsible shell enclosing said support member and said pressure reservoir, said housing <u>means</u> having a size and shape for enabling said pressure reservoir to expand naturally and for confining said reservoir to fill concentrically about said support member<u>, said collapsible shell loosely positioned around said sleeve means and defining a chamber between said sleeve means and said collapsible shell</u>;
> inlet means in one end of said support member for introducing a liquid into said elastic pressure reservoir; and
> outlet means in the other end of said support member for dispensing liquid from said pressure reservoir to a selected site.

Zelkind Decl., Ex. 1. Thus, the clarifying amendment made explicit properties of the collapsible housing inherent in the claims as originally issued, without changing the scope of the claims. Zelkind Decl., Ex. 2, ¶¶5-6.

On July 27, 2009, about two weeks after the issuance of the reexamination certificate,

1  Defendants requested construction of the newly added claim terms. Defendants Request for
2  Claim Construction (Doc. 261). Defendants did not confer with I-Flow prior to filing their
3  request to determine whether a dispute existed between the parties. Zelkind Decl., ¶4. On July
4  28, 2009, upon learning of Defendants' request, I-Flow contacted Defendants' counsel to
5  ascertain whether a dispute existed between the parties regarding claim construction. Zelkind
6  Decl., ¶5. Defendants did not provide their position. *Id.* Later that day, I-Flow sent a follow-up
7  letter to Defendants identifying its proposed construction position that the newly added claim
8  terms be construed according to their plain and ordinary meaning and further requesting that "[i]f
9  Defendants disagree and wish to suggest a different claim construction [to] please provide the
10 proposed construction." Zelkind Decl., Ex. 3. Defendants neither provided an alternate
11 construction nor indicated whether they agree with I-Flow's position. Zelkind Decl.,¶6. I-Flow
12 sent two more emails, on July 29, 2009 and August 4, 2009, each time asking Defendants to either
13 provide their proposed construction or indicate whether they agree with I-Flow's proposed
14 construction. Zelkind Decl., Exs. 5 and 6. Defendants ignored I-Flow's emails and refused to
15 respond. Zelkind Decl., ¶¶7, 8. Accordingly, I-Flow has been forced to present a proposed
16 construction without knowing Defendants' proposed construction position or whether there is
17 even a dispute between the parties.

### III. THE LAW OF CLAIM CONSTRUCTION

19  Claim construction is a question of law for the court to decide. *Cybor Corp. v. FAS*
20 *Techs.*, 138 F.3d 1448, 1455-56 (Fed. Cir. 1998); *Markman v. Westview Instruments, Inc.*, 52 F.3d
21 967, 976 (Fed. Cir. 1995) (en banc), *aff'd,* 517 U.S. 370, 391 (1996). Claim construction begins
22 by considering the words of the claim. *See K-2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1364-65
23 (Fed. Cir. 1999); *see also Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) ("The
24 construction that stays true to the claim language and most naturally aligns with the patent's
25 description of the invention [in the specification] will be, in the end, the correct construction.").
26 The goal of construing patent claims is not to rewrite the claims, but to explain to the trier of fact,
27 where necessary, how the terms chosen by the patentee would have been understood by one of
28 ordinary skill in the art. *See K-2 Corp.*, 191 F.3d at 1365. "In some cases, the ordinary meaning

of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Phillips*, 415 F.3d at 1314. The task of comprehending terms, as understood by a person of skill in the art, is not always difficult. *Acumed LLC v. Stryker Corp*. 483 F.3d 800, 805 (Fed. Cir. 2007). Words that have no particular meaning in a field of art can be given their ordinary, lay meaning. *Acumed*, 483 F.3d at 805 (giving the word "curved" its ordinary, lay meaning as the term does not have a particular meaning in a field of art). When a term is not a technical term of art, it does not require elaborate interpretation. *Brown v. 3M*, 265 F.3d 1349, 1352 (Fed. Cir. 2001).

## IV. THE NEWLY-ADDED CLAIM TERMS SHOULD BE CONSTRUED ACCORDING TO THEIR ORDINARY MEANING

The claim terms added through the clarifying amendment made during reexamination of the '481 Patent should be construed according to their plain and ordinary meaning. As mentioned above, in some cases, the ordinary meaning of claim language, as understood by a person of skill in the art may be readily apparent even to a lay person. *Phillips*, 415 F.3d at 1314. In those instances, claim construction only requires the application of widely accepted meaning of commonly understood words. *Id.* This is such a case.

Through reexamination, Claim 1 of the '481 Patent was clarified by adding the language: "said collapsible non-stretchable housing means loosely positioned around said sleeve means and defining a chamber between said sleeve means and said collapsible non-stretchable housing means." This Court has already construed the terms "collapsible non-stretchable housing means" to mean "a housing that is not rigid and cannot be permanently stretched, including elastic or semi-elastic materials." Claim Construction Order (Doc. 78), 6. The Court also construed the term "sleeve means" as a "membrane or bladder." *Id.* at 4. The remaining terms, "loosely positioned" and "defining a chamber," should be construed according to their plain and ordinary meanings.

The terms "loosely positioned" and "defining a chamber" are not technical terms and do not have specialized meaning in the art or as used in the '481 patent. The language was added to

1  clarify that the collapsible housing claimed in the '481 patent is a separate and distinct structure
2  from the bladder assembly structure (claimed as a separate and distinct element in the '481 patent
3  as originally issued).  Additionally, the collapsible housing must allow the bladder assembly
4  (sleeve means) to expand naturally as it is filled with fluid.  The distinctly claimed structures are
5  so described in the specification of the '481 patent and apparent from the drawings.  See Figure 2
6  of the '481 reproduced below with reference numerals removed and textual labels added.  Thus,
7  the collapsible housing must necessarily be loosely positioned around the bladder assembly
8  (sleeve means), defining some chamber or space between the housing and the bladder.



18  The meaning of these terms, as understood by a person of skill in the art, is readily
19  apparent to a lay person.  As such, the plain and ordinary meaning of these claim terms should be
20  used.  Moreover, construction of these terms according to their plain and ordinary meaning
21  naturally aligns with the patent's description of the invention, fulfilling the tenets set forth by the
22  Federal Circuit in *Phillips*.  As in *Acumed*, the newly added claim terms have no specialized or
23  technical meaning in the art and are self-evident to the lay person.  The collapsible housing must
24  be loosely positioned, i.e., not taut, around the sleeve means.  As a result, the collapsible housing
25  must necessarily form a chamber or space between the sleeve means and the collapsible housing.
26  These terms do not require additional elaboration as they are readily understood by the reader.
27  Neither the claims nor the specification require additional restrictions on how loose the
28  positioning of the housing or the shape or geometric configuration of the space between the

1  collapsible housing and bladder assembly.

2  As discussed above, I-Flow attempted to ascertain whether a dispute exists between the
3  parties as to the meaning of the newly-added claim language.  On several occasions I-Flow
4  requested Defendants to identify their proposed claim construction position.  Defendants,
5  however, have not indicated what their proposed construction position is or, even, whether they
6  agree with I-Flow's position.  Thus, to the extent necessary, I-Flow respectfully requests an
7  opportunity to respond to Defendants' claim construction position, if a dispute, in fact, exists
8  between the parties or if Defendants propose to read extraneous limitations into the claims,
9  regarding which I-Flow has no notice and no ability to respond in this briefing.

## V. **CONCLUSION**

11  The claim terms "loosely positioned" and "defining a chamber" are not technical or
12  specialized terms of art and thus do not require elaborate interpretation.  The meaning of the
13  newly-added claim terms is readily apparent to a lay person and should carry its plain and
14  ordinary meaning.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated:  August 7, 2009          By: *s/Boris Zelkind*
                                    Steven J. Nataupsky
                                    Boris Zelkind
                                    Ali S. Razai

                                Attorneys for Plaintiff and Counter-Defendant
                                I-FLOW CORPORATION

## CERTIFICATE OF SERVICE

I hereby certify that on August 7, 2009, I caused the I-FLOW'S CLAIM CONSTRUCTION BRIEF REGARDING THE REEXAMINED CLAIMS OF U.S. PATENT NO. 5,284,481 to be electronically filed with the Clerk of the Court using the CM/ECF system which will send electronic notification of such filing to the following person(s):

Robert C. Matz
THE LAW FIRM OF ROBERT C. MATZ, LLP
rcmatz@rcmatzlaw.com

Norbert Stahl, Esq.
STAHL LAW FIRM
nstahl@patentlawservice.com

I certify and declare under penalty of perjury under the laws of the State of California that I am employed in the office of a member of the bar of this Court at whose direction the service was made, and that the forgoing is true and correct.

Executed on August 7, 2009, at Irvine, California.

*[signature]*
Claire A. Stoneman

IFLOWL.241L/IFLOWL.261L
7570820
073109