1  Robert C. Matz (SBN 217822)
   rcmatz@rcmatzlaw.com
2  THE LAW OFFICE OF ROBERT C. MATZ LLP
   1315 Oak Street, Suite 315
3  Alameda, California 94501
   Telephone: (510) 865-1150
4
   Attorney for Defendants
5  APEX MEDICAL TECHNOLOGIES, INC.,
   MARK MCGLOTHLIN and ZONE MEDICAL LLC
6

7

8

9                    **UNITED STATES DISTRICT COURT**

10                  **SOUTHERN DISTRICT OF CALIFORNIA**

11
   I-FLOW CORPORATION, a Delaware          CASE NO. 07-CV-1200 – DMS (NLS)
12 corporation,

13                         Plaintiff,       **DEFENDANTS' TRIAL BRIEF**

14        vs.

15 APEX MEDICAL TECHNOLOGIES, INC., a      Date:     October 5, 2009
   California corporation; MARK            Time:     8:30 a.m.
16 MCGLOTHLIN, an Individual,              Place:  United States District Court
                                           Courtroom: 10
17                        Defendants.
                                           **The Honorable Dana M. Sabraw**
18 APEX MEDICAL TECHNOLOGIES, INC., a
   California corporation
19
20                    Counterclaimant,

21        vs.

22 I-FLOW CORPORATION, a Delaware
   corporation,
23
                          Counterdefendant.
24

25

26

27

28

1       In accordance with this Court's Order Re: Trial, dated August 6, 2009, Defendants Apex

2   Medical Technologies, Inc. ("Apex"), Mark McGlothlin ("Mr. McGlothlin"), and Zone Medical,

3   LLC ("Zone Medical") (collectively, "Defendants") hereby submit their trial brief to the Court to

4   briefly summarize their theories of the case, and to briefly explain what they expect the evidence

5   presented at trial will show.

6       To the extent there are theories of the case and evidence which are not discussed in this trial

7   brief, Defendants incorporate by reference, and direct the Court and the public to, Defendants'

8   Memorandum of Contentions of Fact and Law (Docket No. 252), which sets forth additional theories

9   and evidence not discussed in this trial brief.

10      **I.      Defendants' Theories Of The Case**

11      This case is about a different, better, safer kind of pain pump – Apex's Solace Infusion Pump

12  – and I-Flow Corporation's ("I-Flow") efforts to prevent doctors, hospitals, and patients from

13  enjoying the benefits of the Solace Infusion Pump, and to prevent Defendants from competing with I-

14  Flow in the marketplace.  Apex was started by a husband and wife team in their garage.

15      I-Flow's patent infringement claims are based upon strained arguments which counsel for I-

16  Flow spoon-fed to four experts, all of whom simply signed off on their expert reports (which are

17  nearly identical) in exchange for hefty payments from I-Flow.  Importantly, I-Flow was unsuccessful

18  in convincing either of the inventors of the patent-in-suit to testify for I-Flow at trial.  Instead, Mr.

19  Emil Soika (one of the inventors of the patent) is testifying in support of the Defendants.  He will

20  testify that Apex's product does not contain all of the elements of the asserted claims.  He will also

21  testify that the reexamined claims of the '481 patent do not even describe his invention and, in fact,

22  invalidate it.

23      I-Flow's second through fifth causes of action were brought shortly after Defendants

24  exercised their legal rights and requested that the United States Patent Office conduct a

25  reexamination of I-Flow's patent (which resulted in a substantial change to the overall scope of

26  protection of the patent-in-suit).  For this and other reasons, therefore, Defendants will seek an award

27  of court costs and reasonable attorneys' fees.

28

1       There are two series of events which prompted I-Flow to file its second through fifth causes

2   of action (besides its desire to avoid a stay of the instant litigation during the course of the

3   reexamination of the patent):  (1) Apex's participation in the Adaptive Business Leaders ("ABL")

4   organization; and (2) Apex's agreement to make a part for I-Flow, using Apex's patented technology

5   and know-how.  With respect to the ABL organization, I-Flow's claims are based upon the incredible

6   and self-serving testimony of Don Earhart, I-Flow's President, CEO, and Chairman of the Board of

7   Directors, who claims that he – as President and CEO of a publicly-traded company – was at liberty

8   to disclose the company's trade secrets and non trade secret confidential business information during

9   ABL meetings even though (a) I-Flow has no documentary evidence to support this claim, (b) the

10  testimony of its own experts severely undercuts this claim, and (c) the application Mr. Earhart,

11  signed when he joined the ABL organization, specifically required him to acknowledge that the

12  information he disclosed during these meetings would be disclosed to others.  Moreover, much of the

13  supposed "trade secret" information Mr. Earhart allegedly disclosed during these meetings is either a

14  matter of common sense, widely known in the industry or even outside the industry, or could be

15  obtained from publicly available information through the exercise of reasonable diligence.

16      The evidence will also show that I-Flow was unsuccessful in developing a latex-free bladder

17  for I-Flow's On-Q pump that avoided latex allergy problems.  For that reason, I-Flow approached

18  Apex, which I-Flow itself acknowledged as an expert in the field of non-latex products.  After Apex

19  engineered and created a latex-free pump bladder using its own patented technology, I-Flow and

20  Apex entered into a licensing agreement so that Apex could supply I-Flow with production quantities

21  of Apex's novel, redesigned part.  Incredibly, however, I-Flow claims that it was Apex who

22  misappropriated trade secret information from I-Flow when if anything, it was the other way around.

23      If anyone has been economically injured here, it has been Defendants.  The marketplace for

24  infusion pumps is dominated by companies who have, responsibly, removed the latex from their

25  products.  In fact, I-Flow is virtually the only company in the market who still sells infusion pumps

26  containing latex.  In an attempt to compete with latex-free companies, I-Flow falsely advertises that

27  human contact with the latex in its product is "eliminated" when, in fact, it is not.  The evidence will

28  show that the latex in I-Flow's infusion pump can come into direct contact with human skin through

1   vent holes in the pump.  This not only places hospital workers, doctors, and patients at risk of allergic

2   latex reactions, which can be quite severe, it also damages Defendants by diminishing the perceived

3   value of its latex-free products and forcing them to engage in corrective advertising.

4          II.        **Defendants' Explanation of What The Evidence Will Show**

5          Defendants respectfully submit that the evidence at trial will show the following:

6              **A.  Defendants' Non-infringement of the Patent-in-Suit.**

7          The evidence will show that the Solace Pump does not infringe claim 1 of the patent-in-suit,

8   either literally or under the doctrine of equivalents, and, for that reason, does not infringe claim 2

9   either, which is dependent from Claim 1.  The evidence will also show that the Solace Pump does not

10  infringe claim 15 of the patent-in-suit, either literally or under the doctrine of equivalents.  The

11  following is a brief description of the evidence which will be presented at trial in this regard:

12             **1.  The Solace Pump Does Not Infringe Claim 1 of the Patent-in-Suit.**

13         Defendants do not infringe claim 1 of the '481 Patent because there are at least three required

14  claim elements of the patent-in-suit that are not present in the Solace Pump:

15             **a.  The Bladder of the Solace Infusion Pump Has A Single Point of
               Attachment to the Support Member; Not Multiple Points of**

16                **Attachment.**

17         I-Flow bears the burden of proving that Apex infringes the patent-in-suit.  Nevertheless,

18  Defendants will prove at trial that the Solace Infusion Pump does not infringe Claim 1 of the

19  patent-in-suit because the bladder of the Solace Infusion Pump has a ***single*** point of attachment

20  to the support member, whereas the patent requires ***multiple*** points of attachment.  This will be

21  shown through the testimony of Emil Soika, one of the named inventors of the patent-in-suit,

22  through the expert witness testimony of Richard Meyst, and through the testimony of Mark

23  McGlothlin, Alice DePaul, Scott Herrick, and others.

24  / / /

25  / / /

26  / / /

27

28

**b. The Solace Infusion Pump Does Not Have A Pressure Chamber That Has a Substantially Zero Fill Volume When Not Pressurized.**

Defendants will also prove at trial that the Solace Infusion Pump does not infringe Claim 1 of the patent-in-suit because the Solace Infusion Pump does not have a pressure chamber having a "substantially zero fill volume when not pressurized," as required by the patent. Instead, the fill volume of the Solace Infusion Pump is much greater than "substantially zero" when not pressurized. This will be shown through the testimony of Emil Soika, one of the named inventors of the patent-in-suit, through the expert witness testimony of Richard Meyst, and through the testimony of Mark McGlothlin, Alice DePaul, Scott Herrick, and others.

**c. The Solace Infusion Pump Has A Shell or Cover That Can Be, And Is, Permanently Stretched.**

Defendants will also prove at trial that the Solace Infusion Pump does not infringe Claim 1 of the patent in suit because the shell or cover of the pump can be, and is, permanently stretched, whereas I-Flow's patent requires a shell or cover that *cannot* be permanently stretched. This will be shown through the testimony of Emil Soika, one of the named inventors of the patent-in-suit, through the expert witness testimony of Richard Meyst, and through the testimony of Mark McGlothlin, Alice DePaul, Scott Herrick, and others.

**2. The Solace Infusion Pump Does Not Infringe Claim 2 of the Patent-in-Suit.**

Defendants will also prove at trial that the Solace Infusion Pump does not infringe Claim 2 of the patent-in-suit, either literally or under the doctrine of equivalents, because it is a dependent claim, which requires I-Flow to prove the presence of all of the elements of Claim 1. Because Defendants will prove at trial that the Solace Infusion Pump does not infringe Claim 1 of the patent-in-suit, Defendants cannot be held liable for infringing Claim 2. This will be shown through the testimony of Emil Soika, one of the named inventors of the patent-in-suit, through the expert witness testimony of Richard Meyst, and through the testimony of Mark McGlothlin, Alice DePaul, Scott Herrick, and others, and will also be shown by and through the arguments of counsel.

### 3. The Solace Infusion Pump Does Not Infringe Claim 15 of the Patent-in-Suit.

The evidence will show that the Solace Pump does not infringe claim 15 of the patent-in-suit, either literally or under the doctrine of equivalents, for the following reasons.

#### a. The Elastic Sleeve on the Solace Infusion Pump Is Mounted By Stretching It Over the Support Member.

I-Flow bears the burden of proving that Defendants infringe the patent-in-suit. Nevertheless, Defendants will prove at trial that the Solace Infusion Pump does not infringe Claim 15 of the patent-in-suit because the elongated elastic sleeve on the Solace Infusion Pump is mounted by stretching it over the support member, whereas the patent requires an elastic sleeve which is mounted "in non-stretched surface contact." This will be shown through the testimony of Emil Soika, one of the named inventors of the patent-in-suit, through the expert witness testimony of Richard Meyst, and through the testimony of Mark McGlothlin, Alice DePaul, Scott Herrick, and others.

#### b. The Solace Infusion Pump Does Not Have An Inlet Port In One End and an Outlet Port In The Other End of the Support Member.

Defendants will also prove at trial that the Solace Infusion Pump does not infringe Claim 15 of the patent-in-suit because the Solace pump does not have an inlet port "in one end" of the support member and an outlet port "on the other end" of the support member, as required by Claim 15. Instead, the Solace Infusion Pump has parallel ports. This will be shown through the testimony of Emil Soika, one of the named inventors of the patent-in-suit, through the expert witness testimony of Richard Meyst, and through the testimony of Mark McGlothlin, Alice DePaul, Scott Herrick, and others.

### 4. Defendants Did Not Act In Reckless Disregard of the Patent-in-Suit; They Cannot Be Found To Have Willfully Infringed The Patent-in-Suit.

Although Plaintiff will be unable to prove that Defendants have infringed, either directly or under the doctrine of equivalents, any valid claim of the patent-in-suit, Defendants will prove at trial that they did not act in reckless disregard of I-Flow's patent rights and therefore cannot be held liable for willfully infringing I-Flow's patent rights, if any. The evidence will show that

Defendants' goal was to create a "non-infringing alternative" to I-Flow's ON-Q Infusion Pump, and that they obtained competent opinions from experienced attorneys stating that the Solace Infusion Pump does not infringe the patent-in-suit.  This will be proven through the testimony of Mark McGlothlin, Alice DePaul, Scott Herrick, Whitney Gitner, Mike Marasco, and others, and through the expert witness testimony of John Knoble.

**B.  Defendants Are Entitled to Absolute Intervening Rights Because There Was A Substantial Change in the Claim of the Patent-in-Suit.**

Defendants will also show that there was a substantial change in the scope of I-Flow's patent during the course of this litigation, entitling Defendants to absolute intervening rights.  This will be proven through the testimony of Emil Soika, Mark McGlothlin, Alice DePaul, Richard Meyst, and John Knoble.

**C.  The Unenforceability and Invalidity of the Patent-in-Suit.**

Defendants also allege that I-Flow's patent is unenforceable and invalid for the following reasons.

**1.  The Patent-in-Suit Is Unenforceable Due To Inequitable Conduct.**

One of the attorneys who originally applied for the patent, and who owed a duty of candor to the United States Patent Office, committed fraud by intentionally failing to disclose the content of an application to the European Patent Office for a patent on similar technology. Defendants allege that, had the patent examiner known about this European patent application, it never would have issued the patent-in-suit.  This will be proven through the expert witness testimony of John Knoble.

**2.  The Patent-in-Suit Is Invalid Because It Is Anticipated And Obvious.**

Defendants also allege that I-Flow's patent is invalid because it was anticipated by the prior art, and because it would have been obvious to a person of ordinary skill in the art.  This will be proven through the testimony of Emil Soika, one of the named inventors of the patent-in-suit, and through the expert witness testimony of Richard Meyst and John Knoble.

**D.  Defendants' Have Not Misappropriated Defendants' Trade Secrets, Breached A Duty of Confidence, Nor Competed Unfairly.**

I-Flow's claims for trade secret misappropriation, breach of confidence, and unfair competition are completely unfounded because I-Flow's purported "trade secrets" and confidential non-trade secret information include matters that are either common sense, were already known to Apex and Mr. McGlothlin and others in the industry, or were readily ascertainable through valid means, such as reverse engineering, Internet searches, or through other permissible means of obtaining competitive intelligence.  Defendants also allege that I-Flow failed to implement reasonable measures to protect the alleged trade secrets and confidential information, such as refraining from discussing these matters in public or in other inappropriate fora, and failing to enter into binding confidentiality agreements before disclosing any potential trade secret or confidential information to third parties.  This will be proven through the testimony of Mark McGlothlin, Alice DePaul, Scott Herrick, Whitney Gitner, Stefanie Kramer, Kevin Farrell, and the expert witness testimony of G. Marshall Abbey, Jeffrey Charlton, Perry De Fazio, Randy Hoffman, and Richard Meyst.

**E.  Plaintiff Is Liable for False Advertising and Unfair Competition.**

Defendants allege that I-Flow is guilty of false advertising and unfair competition for falsely stating, in the Directions for Use and in the Technical Bulletin for its ON-Q Infusion Pump, that the risk of human contact with the latex in their ON-Q Infusion Pump is "eliminated," when, in fact, it is not.  Defendants allege that the statements made by I-Flow, which are contained in the Directions for Use and Technical Bulletin for its ON-Q Infusion Pump, are literally false.  Defendants also allege that I-Flow's statements in the Directions for Use and in the Technical Bulletins for the ON-Q Infusion Pump are misleading to hospitals, hospital workers, doctors, and patients, and are likely to cause confusion.  This will be proven through the testimony of Dr. Ronald Simon, Giorgio Di Palma, Bryn Burr, and others.

**F.  Plaintiff's Patent Damages Claims Are Inaccurate.**

I-Flow's damages calculation is based on inaccurate projections made by David Hanson. This will be shown through the cross examination of Mr. Hanson, and the testimony of Stanley Stephenson and Mike Marasco.

**G.  There Is No Reasonable Basis for Plaintiff's Alleged Damages For Its Second Through Fifth Causes of Action.**

I-Flow's damages expert, David Hanson, conducted no evaluation of the value of the intellectual property allegedly at issue in I-Flow's second through fifth causes of action.  Since there is no reasonable basis for his calculations, I-Flow is not entitled to an award of damages on these claims.  This will be shown through the cross examination of Mr. Hanson, and the testimony of Stanley Stephenson and Mike Marasco.

**H.  Defendant Mark McGlothlin Cannot Be Held Personally Liable Because At All Relevant Times He Was Acting As A Corporate Representative of Apex Medical Technologies, Inc. or Zone Medical, LLC.**

I-Flow has named Defendant Mark McGlothlin as a defendant in his personal capacity. At all relevant times, however, Mr. McGlothlin was acting as a corporate representative of Apex Medical Technologies, Inc. or Zone Medical, LLC.  Further, Mr. McGlothlin observed all of the requisite corporate formalities with respect to these entities.  For these reasons, Mr. McGlothlin cannot be held personally liable for any of the acts complained of by I-Flow in this case.

**I.  Defendants' Request for Relief.**

At the end of the presentation of evidence, Defendants will ask the jury to make the following findings:  (1) that I-Flow is guilty of false advertisement and unfair competition; (2) that Defendants do not infringe the patent, either literally or under the doctrine of equivalents, as alleged by I-Flow; (3) that I-Flow's patent is unenforceable and/or invalid; (4) that Defendants Apex Medical Technologies and Mark McGlothlin have not misappropriated I-Flow's trade secrets, have not breached a duty of confidence to I-Flow, and have not committed unfair competition; and (5) that I-Flow's claims of trade secret misappropriation, breach of confidence, and unfair competition are completely without merit and should be dismissed.

1   At the close of evidence, Defendants will ask the Court for a ruling that I-Flow's trade

2   secrets claims were brought in bad faith, thus entitling them to an award of court costs and

3   attorneys' fees.  Finally, Defendants will ask the Court for a ruling, under the Patent Act, that

4   this is an exceptional case, thus entitling Defendants to an award of court costs and reasonable

5   attorneys' fees.

6

7   Date:  September 28, 2009          Respectfully submitted,

8                                     By:  _____/s/ *Robert C. Matz*_____

9                                          **LAW OFFICE OF ROBERT C. MATZ, LLP**
                                           ROBERT C. MATZ

10                                    Attorney for Defendants:
                                      APEX MEDICAL TECHNOLOGIES, INC., MARK
11                                    MCGLOTHLIN AND ZONE MEDICAL, LLC

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on September 28, 2009, I electronically filed the document entitled:

**DEFENDANTS' TRIAL BRIEF**

with the Clerk of Court using the CM/ECF system which will send notification of such filing to

the following e-mail addresses:

**Boris Zelkind**
Knobbe Martens Olson & Bear
Email: boris.zelkind@kmob.com

**Ali S. Razai**
Knobbe, Martens, Olson & Bear LLP
Email: ali.razai@kmob.com

**Norbert Stahl**
Stahl Law Firm
Email: nstahl@patentlawservice.com

**Ralph B Kalfayan**
Krause Kalfayan Benink and Slavens
Email: rkalfayan@kkbs-law.com

**Trevor Q. Coddington**
San Diego IP Law Group, LLP
E-mail: trevorcoddington@sandiegoiplaw.com

**Doug Olson**
San Diego IP Law Group, LLP
E-mail: dougolson@sandiegoiplaw.com

**James Fazio**
San Diego IP Law Group, LLP
E-mail: jamesfazio@sandiegoiplaw.com

I hereby certify and declare, under the penalty of perjury, under the laws of the United

States and the State of California, that the foregoing is true and correct.  Executed on this 28th

day of September, 2009, at San Diego, California.

By:        */s/Robert C. Matz*
               ROBERT C. MATZ
Attorney for Defendants
APEX MEDICAL TECHNOLOGIES, INC., MARK
MCGLOTHLIN AND ZONE MEDICAL, LLC