1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   I-FLOW CORPORATION, a Delaware                CASE NO. 07cv1200 DMS (NLS)
     corporation,
12                                                 **FINDINGS OF FACT AND**
                                                   **CONCLUSIONS OF LAW ON**
                                          Plaintiff, **INTERVENING RIGHTS**
13        vs.
                                                   **[Docket No. 449]**
14   APEX MEDICAL TECHNOLOGIES, INC.,
     a California corporation, et al.,
15
                                          Defendants.
16   ───────────────────────────────────

17   AND ALL RELATED COUNTERCLAIMS.

18

19        This matter comes before the Court on Defendants' motion to recognize intervening rights

20   under 35 U.S.C. §§ 252 and 307(b).  Plaintiff filed an opposition to the motion.  Reply briefs were not

21   permitted.  For the reasons set out below, the Court grants Defendants' motion.

22                                        **I.**

23                                   **FINDINGS OF FACT**

24   1.    United States Patent Number 5,284,481 ("the '481 Patent") issued on February 8, 1994. (Decl.

25   of Boris Zelkind in Supp. of Pl.'s Opp'ns to Mots. (Zelkind Decl."), Ex. 17.)

26   2.    Claim 1 of the '481 Patent provides:

27          A compact portable apparatus for dispensing a liquid under pressure at a
            substantially constant flow rate over a period of time comprising:
28
            an elongated generally cylindrical support member;

                                          - 1 -                              07cv1200

elongated elastic sleeve means mounted and sealingly secured at fixed spaced longitudinal positions on said support member for defining a substantially zero non-pressurized volume pressure reservoir for holding a liquid in a pressurized state for dispensing therefrom;

housing means comprising collapsible non-stretchable housing means for containing said support member and said pressure reservoir for enabling said pressure reservoir to expand naturally and for confining said reservoir to fill concentrically about said support member;

inlet means for introducing a liquid into said elastic pressure reservoir; and

outlet means for dispensing liquid from said pressure reservoir to a selected site.

(*Id.* at 162.)

3.       Claim 15 of the '481 Patent recites:

A compact collapsible infusion apparatus for dispensing a liquid under pressure at a predetermined substantially constant flow rate over a period of time comprising:

an elongated generally cylindrical support member having inlet means including an inlet port in one end of said member, and outlet means including an outlet port in the other end of said member;

elongated elastic sleeve means mounted in non-stretched surface contact and sealingly secured at fixed space longitudinal positions on said support member for defining a substantially zero non-pressurized volume pressure reservoir for holding a liquid in a pressurized state for dispensing therefrom;

first housing means including a collapsible shell enclosing said support member and said pressure reservoir, said housing having a size and shape for enabling said pressure reservoir to expand naturally and for confining said reservoir to fill concentrically about said support member;

inlet means in one end of said support member for introducing a liquid into said elastic pressure reservoir; and

outlet means in the other end of said support member for dispensing liquid from said pressure reservoir to a selected site.

(*Id.* at 163.)

4.       On November 12, 2007, Defendants filed an *ex parte* request for reexamination of the '481 Patent with the Patent and Trademark Office ("PTO").

5.       The PTO granted Defendants' request for reexamination on January 16, 2008.

/ / /

/ / /

/ / /

6.     On September 29, 2008, the PTO issued an Office Action rejecting all claims of the '481 Patent as anticipated by European Patent Application Number 90311152.4 ("Block Medical").[1] (Decl. of Trevor Coddington in Supp. of Mots. ("Coddington Decl."), Ex. L.)

7.     Plaintiff's counsel thereafter participated in an interview with three examiners from the PTO concerning the reexamination.  (Coddington Decl., Ex. M.)

8.     The Interview Summary reflects that counsel and the examiners discussed claims 1, 15 and 23 "with respect to the prior art of record."  (*Id.*)  The Summary also reflects that counsel presented amended claim language concerning the housing element "having a loose fit over the elastic sleeve means and a chamber surrounding the elastic sleeve means.  This language was generally agreed to define over the art, subject to further consideration."  (*Id.*)

9.     On November 20, 2008, Plaintiff's counsel submitted to the PTO a written response to the September 29, 2008 Office Action that formally amended the claims to indicate the housing element is "loosely positioned around said sleeve means and defining a chamber between said sleeve means and said collapsible non-stretchable housing means."  (Coddington Decl., Ex. N.)

10.     On April 22, 2009, the PTO issued a Notice of Intent to Issue Ex Parte Reexamination Certificate ("Certificate") in which it indicated that the amended claims were no longer anticipated by Block Medical, and would therefore be allowed. (Coddington Decl., Ex. O.)

11.     The Certificate issued on July 14, 2009. (Coddington Decl., Ex. K.)

12.     Claim 1 of the '481 Patent now provides:

A compact portable apparatus for dispensing a liquid under pressure at a substantially constant flow rate over a period of time comprising:

an elongated generally cylindrical support member;

elongated elastic sleeve means mounted and sealingly secured at fixed spaced longitudinal positions on said support member for defining a substantially zero non-pressurized volume pressure reservoir for holding a liquid in a pressurized state for dispensing therefrom;

housing means comprising collapsible non-stretchable housing means for containing said support member and said pressure reservoir for enabling said pressure reservoir to expand naturally and for confining said reservoir to fill concentrically about said

---

[1] Block Medical, Inc. was the applicant for the European Patent, and was the original assignee of the '481 Patent.  Plaintiff acquired Block Medical, Inc. in 1996, and is now the owner by assignment of both the '481 Patent and the Block Medical Patent.

1
2
support member, *said collapsible non-stretchable housing means loosely positioned around said sleeve means and defining a chamber between said sleeve means and said collapsible non-stretchable housing means*;

3
inlet means for introducing a liquid into said elastic pressure reservoir; and

4
outlet means for dispensing liquid from said pressure reservoir to a selected site.

5
(*Id.* at 4.)

6
13.     Claim 15 of the '481 Patent now recites:

7
A compact collapsible infusion apparatus for dispensing a liquid under pressure at a predetermined substantially constant flow rate over a period of time comprising:

8

9
an elongated generally cylindrical support member having inlet means including an inlet port in one end of said member, and outlet means including an outlet port in the other end of said member;

10

11
12
elongated elastic sleeve means mounted in non-stretched surface contact and sealingly secured at fixed space longitudinal positions on said support member for defining a substantially zero non-pressurized volume pressure reservoir for holding a liquid in a pressurized state for dispensing therefrom;

13
14
15
first housing means including a collapsible shell enclosing said support member and said pressure reservoir, said housing *means* having a size and shape for enabling said pressure reservoir to expand naturally and for confining said reservoir to fill concentrically about said support member, *said collapsible shell loosely positioned around said sleeve means and defining a chamber between said sleeve means and said collapsible shell*;

16
17
inlet means in one end of said support member for introducing a liquid into said elastic pressure reservoir; and

18
19
outlet means in the other end of said support member for dispensing liquid from said pressure reservoir to a selected site.

20
(*Id.*)

21
**II.**

22
**CONCLUSIONS OF LAW**

23     1.     As an initial matter, the Court finds Defendants are not entitled to equitable intervening rights

24     in light of the jury's finding of willful patent infringement. *See Shockley v. Arcan, Inc.*, 248 F.3d

25     1349, 1361 (Fed. Cir. 2001) (stating finding of willful infringement amply supported district court's

26     decision to deny equitable intervening rights).

27     / / /

28     / / /

1    2.       The doctrine of absolute intervening rights is based on the second paragraph of 35 U.S.C. §

2    252,[2] and provides accused infringers with an affirmative defense that limits infringement damages

3    to "the period following the issuance of the reexamination certificate."  *Laitram Corp. v. NEC Corp.*,

4    163 F.3d 1342, 1346 (Fed. Cir. 1998).  *See also Bic Leisure Products, Inc. v. Windsurfing Int'l, Inc.*,

5    1 F.3d 1214, 1221 (Fed. Cir. 1993) (stating absolute intervening rights defense addresses damages

6    issue).

7    3.       Before a defendant can raise the defense, the court must determine whether the claims in the

8    original patent are "substantially identical" to those in the reexamined patent.  *See* 35 U.S.C. § 252,

9    ¶ 1; *Westvaco Corp. v. Int'l Paper Co.*, 991 F.2d 735, 742 (Fed. Cir. 1993) (citing *Kaufman Co., Inc.*

10   *v. Lantech, Inc.*, 807 F.2d 970, 977 (Fed. Cir. 1986)).

11   4.       The Federal Circuit has held that "identical" under section 252 "does not mean verbatim, but

12   rather means 'without substantive change.'"  *Tennant Co. v. Hako Minuteman, Inc.*, 878 F.2d 1413,

13   1417 (Fed. Cir. 1989) (quoting *Slimfold Manufacturing Co., Inc. v. Kinkead Industries, Inc.*, 810 F.2d

14   1113, 1115 (Fed. Cir. 1987)).

15   5.       Furthermore, "courts have held that it is the scope of the claim that must be identical, not that

16   the identical words must be used."  *Slimfold*, 810 F.2d at 1115.

17   6.       Here, Defendants assert Plaintiff narrowed the scope of the claims of the '481 Patent during

18   reexamination when it amended the claims to state that the collapsible non-stretchable housing means

19   be "loosely positioned around said sleeve means" and that it "defin[e] a chamber between said sleeve

20   / / /

21

22       [2] The second paragraph of section 252 provides: "A reissued patent shall not abridge or affect
     the right of any person or that persons's successors in business who, prior to grants of a reissue, made,
23   purchased, offered to sell, or used within the United States, or imported into the United States,
     anything patented by the reissued patent, to continue the use of, to offer to sell, or to sell to others to
24   be used, offered for sale, or sold, the specific thing so made, purchased, offered for sale, used, or
     imported unless the making, using, offering for sale, or selling of such thin infringes a valid claim of
25   the reissued patent which was in the original patent.  The court before which such matter is in question
     may provide for the continued manufacture, use, offer for sale, or sale of the thing made, purchased,
26   offered for sale, used, or imported as specified, or for the manufacture, use, offer for sale, or sale in
     the United States of which substantial preparation was made before the grant of the reissue, and the
27   court may also provide for the continued practices of any process patented buy the reissue that is
     practiced, or for the practice of which substantial preparation was made, before the grant of the
28   reissue, to the extent and under such terms as the court deems equitable for the protection of
     investments made or business commenced before the grant of the reissue."  35 U.S.C. § 252, ¶ 2.

1    means and said collapsible non-stretchable housing means[.]" Plaintiff argues the amendments merely

2    clarify limitations that were inherent in the original claims.

3    7.        In determining "'whether a claim change is substantive it is necessary to analyze the claims

4    of the original and the reexamined patents in light of the particular facts, including the prior art, the

5    prosecution history, other claims, and any other pertinent information.'" *Laitram*, 163 F.3d at 1347

6    (quoting *Laitram Corp. v. NEC Corp.*, 952 F.2d 1357, 1362-63 (Fed. Cir. 1991) ("*Laitram I*")).

7    8.        This Court has examined those facts, and concludes that the original claims were substantively

8    changed during the reexamination.  Contrary to Plaintiff's suggestion, there is nothing in the

9    specification of the '481 Patent that inherently or implicitly limits the housing means as "loosely

10   positioned around said sleeve means" or "defining a chamber between said sleeve means and said

11   collapsible non-stretchable housing means."  Although the drawings depict a housing means that is

12   loosely positioned around the sleeve means and that defines a chamber between the sleeve means and

13   the housing means, those drawings do not operate as limitations on the scope of the claim.  Indeed,

14   Plaintiff fails to cite any portion of the specification of the '481 Patent that requires those limitations

15   be read into the original claims.

16   9.        Instead, Plaintiff argues the amendments to the claims "highlighted that the housing is a

17   separate structure from the bladder assembly, *i.e.*, sleeve means." (Opp'n to Mot. at 4.) However, that

18   is not what the amendments do.  Rather, the amendments explain how the housing means is positioned

19   in relation to the sleeve means.  It is clear that the Examiner understood that the housing means was

20   a separate structure from the sleeve means when she rejected the original claims of the '481 Patent.

21   (*See* Coddington Decl., Ex. L at 3.)  That was not the reason the original claims were rejected.  Rather,

22   the examiner rejected the claims because Block Medical anticipated each element of the claims,

23   including the housing means and the separate sleeve means.  Therefore, the amendment did not simply

24   highlight that the structures were separate: It explained the positional relationship between the two

25   structures.

26   10.       Plaintiff also argues the amendments were required by the "enabling" and "confining"

27   limitations in the original claims.  (*See* Opp'n to Mot. at 6.)  In essence, Plaintiff asserts the housing

28   means had to be loosely positioned around the sleeve means for the pump to operate properly.

07cv1200

1  However, it appears the pump could operate properly if the housing means was in a fixed position

2  around the sleeve means, as in Block Medical.  Although having the housing means loosely positioned

3  around the sleeve means may have provided some slight improvement in the performance of the pump,

4  the primary objective of this type of housing means was to decrease the cost of "packaging, storage

5  and shipment." (Zelkind Decl., Ex. 17 at 160 ('481 Patent, col. 1, lines 47-48).)  It was not meant to

6  improve the performance of the pump.  The Court therefore rejects Plaintiff's argument that the

7  amendments were required by the "enabling" and "confining" limitations of the original claims.

8  11.      In light of the Court's conclusion that the claims in the reexamined patent are not substantially

9  identical to the claims in the original patent, Plaintiff's damages must be limited to those suffered after

10  the Certificate issued on July 14, 2009.  Defendants assert there is no evidence of Plaintiff's damages

11  after that specific date, but there is evidence of the number of pumps Defendants sold after July 31,

12  2009.  (*See* Coddington Decl., Ex. Q at 13.)  Of the total number of pumps sold, 17,219, only 3,967

13  were sold after July 31, 2009.  (*Id.*)  This amounts to twenty-three percent of the total pumps sold.

14  Applying this percentage to the damage awards in this case, the Court reduces the compensatory

15  patent damages award against Apex, which was $2,876,548, to $661,606.  The Court similarly reduces

16  the compensatory patent damages award against Zone, which was $93,385, to $21,479.

17                                                        **III.**

18                                      **CONCLUSION AND ORDER**

19          Based on the foregoing findings of fact and conclusions of law, Defendants' motion to

20  recognize intervening rights is granted, and the compensatory damage award for patent infringement

21  against Apex is reduced from $2,876,548 to $661,606, and the compensatory damage award for patent

22  infringement against Zone is reduced from $93,385 to $21,479.

23          **IT IS SO ORDERED.**

24  DATED:  January 12, 2010

25  _____

26                                              HON. DANA M. SABRAW
                                                United States District Judge

27

28